## BACA v. PADILLA.

(No. 2373.    June 9, 1920.)

### SYLLABUS BY THE COURT.

1.   Section 1860, Code 1915, by implication authorizes the appearance of private counsel on behalf of the state in criminal proceedings "on order of the court, with the consent of the district attorney or Attorney General."            P. 226

2.   Contracts by attorneys at law for contingent fees are generally upheld by the courts, but a contract by an attorney at law to assist in the prosecution of a criminal case for a contingent fee, dependent upon the conviction of the accused, is contrary to public policy.            P. 226

3.   Where an attorney at law enters into a contract with another to assist in the prosecution of a criinal case for a contingent fee, the contract is void and there can be no recovery on the contract, but such a contract is not inherently malum is se or malum prohibitum, and the attorney may recover the reasonable value of his services on a quantum meruit.            P. 229

4.   When the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then

there can be no recovery upon a quantum meruit, but where the illegality was not in what the plaintiff was to do but in in the manner in which he was to be compensated for doing the legal thing, then he can recover upon a quantum meruit for the reasonable value of his services.          P. 229

Appeal from District Court, Socorro County; M. C. Mechem, Judge.

Action by Elfego Baca against Zacarias Padilla. Judgment for plaintiff, and defendant appeals. Affirmed.

NEIL B. FIELD, of Albuquerque, for appellant.

Contract is contra bona mores and violates established policy of the State. Art. 4, Sec. 24, State Const.; Sec. 1 Art. 5 State Const.; Secs. 1860, 1870, 5321, Code 1915.

Plaintiff was interested in the matter in controversy and therefore he was disqualified to represent the State in the trial of the indictment. Hare v. Headley, 52 N. J. E. 496, 501; State v. Lucero, 20 N. M. 55.

Employment was contrary to public policy of the State. Biemel v. State, 71 Wis. 444, 450-451; Rock v. Ekern 162 Wis. 291; Omerod v. Dearman, 100 Pa. St. 561.

I am of course aware that this court has in the past treated the appearance of private counsel to aid in the prosecution of criminal cases as fully authorized by law, but I submit that this distinct question has never been passed upon by the court. That improper conduct of a law officer of the state or of private counsel employed in a criminal case would, if properly brought to the attention of the court justify a reversal would hardly be disputed. State v. Sedillo, 24 N. M. 549; State v. Graves, 21 N. M. 556; Territory v. Chamberlain, 8 N. M. 538; Chacon v. Territory, 7 N. M. 241.

It is clearly against public policy to permit the enforcement of such a contract as was sustained in this case. 9 Cyc. 481; Sampliner v. Motion Picture P. Co. 255 Fed. 242; Price v. Caperton, 1 Duv. (Ky.) 207; ''The Law-Business or Profession''; by Julius Henry Cohen.

M. C. SPICER, of Socorro, for appellee.

The public policy of a state of which the courts will take notice and to which they give effect must be determined from its constitution, laws and judicial decisions and the courts will not resort to other sources of information. Hartford F. Ins. Co. v. Chicago M. & St. P. Ry. Co., 175 U. S. 91; Denson v. Alabama Fuel Co. 73 So. 525; Arlington Hotel Co. v. Rector 186 S. W. 622; Alpers v. Hunt, 24 Pac. 346; N. Y. Mutual L. Ins. Co. v. Durden, 72 S. E. 296; Zugler v. Ill. Trust Bank, 91 N. E. 1041; Hogston v. Bell 112, N. E. 833; Chreste v. Louisville Ry. Co. 180 S. W. 49; State v. Am. Sugar Ref. Co. 71 So. 137; Orrell v. Bay Mfg. Co. 36 So. 561; Roselle v. Farmers' Bank  39 S. W.  274;  Parchen v. Chessman 142 Pac. 631; 146 Pac. 469; Langdon v. Conlian 93 N. W. 389; Huber v. Culp 149 Pac. 216; Sullivan v. Watson 135 S. W. 635.

### OPINION OF THE COURT.

ROBERTS, J.  Appellee brought this suit to recover the sum of $5,000, alleged to be due on a contract to perform professional services as an attorney at law for the appellant, at his request, in the prosecution of a certain criminal case pending in Valencia  county, N. M., for which services it was alleged the appellant agreed to pay appellee a reasonable fee.  Appellant filed a general denial and also pleaded payment and the statute of limitations.  The case was tried to the court, and after the evidence was heard the court made a general finding that plaintiff was entitled to recover the sum of $500. Appellant submitted a finding of fact which, in so far as material, found that appellee accepted employment on the following terms, i. e., if the parties he was to prosecute were acquitted he should be paid a reasonable fee, and if convicted he should receive a "big fee," and that in pursuance to such agreement appellee prosecuted the said action and obtained a verdict of guilty against the defendants therein.  Appellant asked the court to conclude, as a matter of law, from the foregoing

facts specially found, that the contract made and entered into between the appellant and appellee was and is contrary to public policy and void. The conclusion of law was refused, and judgment was entered in favor of appellee in the sum of $500.

(1) The controlling question in 'this case is as to whether or not an attorney at law can enter into a valid contract with a client to assist in the prosecution of a criminal case upon a contingent fee. Appellant argues that it is contrary to the public policy of this state for a private prosecutor to appear in a criminal case. Section 1860, Code 1915, by implication authorizes the appearance of private counsel on behalf of the state in criminal proceedings ''on order of the court, with the consent of the district attorney or Attorney General.'' And in the case of State v. Lucero, 20 N. M. 55, 146 Pac. 407, the right of such private counsel to appear was recognized by this court. This question then may be laid aside and attention directed to a consideration of the question which disposes of this case.

(2) Contracts for contingent fees by attorneys at law were not tolerated at all at common law, but in most of the states such contracts are allowed and their validity sustained; this principally upon two grounds: First that of necessity; the argument being that otherwise many poor suitors with meritorious causes of action would be denied access to the courts because too poverty-stricken to pay counsel; that instead of perverting justice the allowance of such fees is the means of securing the same. The second ground is that at common law the practice of law was followed because of the honor it bestowed upon the lawyer, and not for profit or as a means of livelihood; possibly a false assumption, but nevertheless always religiously adhered to in the profession. In this country the sham has been cast aside, and the courts universally recognize that, while the profession of the law is most honorable, a man who follows the profession must be able to earn a living, and while jealously guard-

ing the relations between attorney and client, and never hesitating to enforce fair dealing on the part of the attorney toward the client, any contract between the attorney and client for the attorney's compensation for legal services, so long as the same is fair, reasonable and valid, will be enforced.

Many cases will be found cited in the note to section 421, Thornton on Attorneys at Law, upholding the validity of contracts for contingent fees generally. We do not believe any case will be found which upholds the validity of a contingent fee beyond the rule of necessity, that is to say, the courts will not uphold such contracts where provisions may be made for the prosecution of the suit by the court in other ways. The most familiar illustration is that offered by suits for divorce and alimony. Contracts have been made by attorneys to prosecute such suits for a designated portion of the alimony recovered, and all such contracts, so far as we are aware, have been declared invalid upon one ground or the other, i. e.: (1) That there was no necessity for permitting such contracts, because the court was authorized by law to require the husband to pay suit money, thus enabling the wife to prosecute her action; (2) that it is the policy of the law that reconciliation should be effected between husband and wife, and the attorney, having a great interest in the amount of alimony recovered, which depended, of course, upon the prosecution of the suit to a conclusion, would at all times be standing in the way of such reconciliation. This matter, in so far as divorce cases are concerned, was ably discussed by the Supreme Court of California, in the case of Newman v. Freitas, 129 Cal. 283, 61 Pac. 907, 50 L. R. A. 548. Many other similar cases will be found referred to in the note to the case of Roller v. Murray, 38 L. R. A. (N. S.) 1202; Barngrover v. Pettigrew, 2 L. R. A. (N. S.) 260. Many of these cases, while not discussing the reason for the rule, held that such contracts are void as against public policy.

There is no case directly in point on the proposition involved in the case now under consideration. There is

a discussion of the question in the case of Price v. Caperton, 1 Duv. (Ky.) 207, but what was said there on the subject was obiter. The only point decided was the right of private prosecutors to appear in the state's case, and the right was upheld.

If the right of a private prosecutor to accept employment for a contingent fee is viewed from the point of necessity, clearly the contract would not be upheld, because the state by its prosecuting officers is presumed to be able to attend to the prosecution of all criminal cases, and again probably the power rests in the court in a case of necessity to appoint some member of the bar to appear and assist in the prosecution. So there would be no occasion for invoking the law of necessity, as is done by the courts in upholding the contingent fee contract in civil cases. Hence it could not be said that the necessities of the case would result in the abrogation of the common-law rule. Unlike a civil suit where the ability of the plaintiff to pay any fee might depend upon the establishment of his cause of action, here, under no conceivable aspect of the case, could the party's ability to employ a private prosecutor in a criminal case be increased or diminished by the outcome of the prosecution. On the other hand, we have injected into the prosecution of a criminal case a prosecutor whose personal interests would be subserved best by securing the conviction of the defendant, and this regardless of the question as to whether or not the defendant were guilty or innocent; that is to say, the size of his fee, or possibly whether he receive any fee at all, would be dependent upon the conviction of the defendant, however innocent he might be. This is contrary to the policy of our law. The state provides a prosecuting attorney, pays him a salary, and no part of his compensation is dependent upon the conviction or acquittal of those charged with infractions of the state law. He is supposed to be a disinterested person, interested only in seeing that justice is administered and the guilty persons punished. To permit and sanction the appearance on behalf of the

state of a private prosecutor, vitally interested person-
ally in securing the conviction of the accused, not for
the purpose of upholding the laws of the state, but in or-
der that the private purse of the prosecutor may be fat-
tened, is abhorrent to the sense of justice and would not,
we believe, be tolerated by any court.

(3) But assuming, for the sake of argument, that
the express contract which the court found had been
made was contrary to public policy and void because
appellee was to receive a contingent fee, the question
nevertheless remains as to whether the decision of the
court is sustainable notwithstanding. The appellee in
his complaint did not declare especially on the original
contract, but generally indebitatus assumpsit. The ap-
pellant has not brought up the evidence, and consequent-
ly we are unable to tell just how the express contract got
into the case, but it will be observed from the finding
made by the court as to the terms of the express contract
there was no illegality in that which appellee agreed to
do, i. e., assist in the prosecution of the criminal case.
The illegality was in the manner by which he was to be
compensated. In Thornton on Attorneys at Law, vol. 2,
§ 435, author says:

"The general rule undoubtedly is that an attorney is not
precluded from recovering compensation for valuable services
by the mere fact that such services were rendered under a
void or voidable contract. There can, of course, be no re-
covery on the contract, but where it is not inherently malum
in se or malum prohibitum the attorney may recover the rea-
sonable value of his services on a quantum meruit."

(4) The author of the note to the case of Barn-
grover v. Pettigrew, 2 L. R. A. (N. S.) 260, says:

"There is an obvious distinction bearing upon the right of
an attorney to recover upon a quantum meruit for services
rendered pursuant to an illegal contract, between a case
where the contract is illegal because the services agreed to
be rendered in performance thereof are illegal, and a case
where the contract is illegal only because of some improper
provision relating to the mode of compensation, or an illegal
stipulation against the right of the client to compromise the
claim without the consent of the attorney. It is apparent, in

the first case, that every objection to permitting a recovery upon an express contract applies with equal force to a recovery upon a quantum meruit. And this is true even when the services are not intrinsically illegal, but are improper and contrary to public policy because of the circumstances under which they are rendered.

"Thus, it was held in Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035, and Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779, that an attorney who enters into a barratrous contract to bring suits cannot recover upon an implied contract for services rendered in a suit brought pursuant to such contract; though the services are not, in themselves and apart from the barratrous contract, improper or illegal. But the weight of authority seems to support the proposition that, if the services performed by the attorney are not themselves illegal, either instrinsically or by reason of the circumstances under which they are rendered, the attorney may recover upon a quantum meruit for their reasonable value, notwithstanding that the contract is, for other reasons, champertous and illegal."

Later cases drawing the same distinction will be found cited in a note to the case of Roller v. Murray, supra. A reading of the cases cited in these two notes (and the notes are very full and complete and further citation would only be as to subsequent cases) will show that when the distinction pointed out by the author of the note in the case first referred to is kept in mind the authorities are all in agreement. When the illegality, either in whole or in part, is in the thing which the party seeking to recover was to do, then there can be no recovery upon a quantum meruit. But where the illegality was not in what the plaintiff was to do but in the manner in which he was to be compensated for doing the legal thing, then he can recover upon a quantum meruit for the reasonable value of his services. This was evidently the theory upon which the court below gave judgment for appellee, and upon this theory the judgment is sustainable.

The judgment will therefore be affirmed; and it is so ordered.

PARKER, C. J. and RAYNOLDS, J., concur.