Reese I. JOYE, Jr., Stanley Claypoole, and George J. Kefalos, Plaintiffs,

v.

Henry T. HEUER, Defendant.

Civ. A. No. 2:90–0259–8.

United States District Court, D. South Carolina, Charleston Division.

Feb. 22, 1993.

Andrew K. Epting, Jr., Charleston, SC, for plaintiffs.

Henry T. Heuer, Los Angeles, CA, for defendant.

## ORDER

BLATT, Senior District Judge.

The parties appeared before this court for the trial of this nonjury case on April 7, 1992. The plaintiffs were represented by counsel and the defendant, an attorney from California, represented himself. This case involves a dispute about an attorney's fee earned from litigation arising out of a fatal motor vehicle accident, which accident occurred in California in July, 1981. The plaintiffs were retained by Mary Ann Parker, a resident of South Carolina, whose husband was killed in the accident. Since the plaintiffs were concerned with a potential statute of limitations problem in California, they decided to associate an attorney there. The plaintiffs had, prior to involving the defendant, instituted an action in South Carolina arising from Mr. Parker's death.

The plaintiffs, in their complaint, claimed that on or about August 11, 1983, the plaintiffs and defendant agreed that Mrs. Parker would be better served by pursuing her claim in California. The complaint herein further alleges that plaintiffs and defendant agreed that plaintiffs would dismiss the South Carolina litigation without prejudice, and that the plaintiffs would receive

at least one-third (⅓) of any fee arising out of the California suit, and as much as fifty percent (50%) of that fee, to the extent that plaintiffs' involvement in the California litigation warranted. Plaintiffs further claim that this agreement was formalized in writing on August 13, 1983, in a letter from plaintiffs to defendant. In addition, the plaintiffs were allowed to amend their complaint to include a cause of action based on quantum meruit.

The defendant, who obtained a verdict for Mrs. Parker in California, and sustained that verdict on appeal, testified that he and the plaintiffs had never entered into any oral fee-splitting arrangement, and, further, that he never received the letter dated August 13, 1983, confirming the alleged oral contract. He testified that the plaintiffs' involvement in the California litigation was, if any, very minimal.

■ This court first addresses the choice of law question raised herein as to whether California or South Carolina law governs the alleged contract between the parties hereto. In *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), the Supreme Court held that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. The *Klaxon* rule rested on the rationale that a federal court, in determining state law issues which arise in federal court only by the accident of diversity, must apply state law, including state conflict of law rules, to those issues. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *In re Merritt Dredging Co., Inc.*, 839 F.2d 203, 205 (4 Cir.1988). Therefore, this court must apply South Carolina's choice of law rule which is *lex loci contractu*, or the law of the place where the contract is made governs the contract. *Livingston v. Atlantic Coast Line R. Co.*, 176 S.C. 385, 180 S.E. 343, 345 (1935). As a general rule, the place a contract is made is the place where the minds of the parties meet, or the place where the final act occurred which made a binding contract. *Arant v. First Southern Co.*, 249 S.C. 305, 153 S.E.2d 919 (1967).

■ This court finds that an offer to divide any fee obtained in the Parker suit in the manner alleged by the plaintiffs was made by the plaintiffs during a telephone conversation placed from South Carolina to the defendant in California on August 11, 1983, (See Tr. p. 38–39), and further, that the defendant in that telephone conversation accepted the offer, thereby creating a valid contract between plaintiffs and defendant. In addition to the oral testimony about such contract, this court was persuaded by two exhibits. The first exhibit—(Pl.Exh.4)—was the letter, dated August 13, 1983, written by the plaintiffs to the defendant, which letter the defendant claims that he never received. The plaintiffs testified that the letter was mailed to the defendant, (See Tr. p. 42), and this court accepts this testimony. While this court recognizes that this exhibit is not the contract between the parties, it is evidence that an oral contract existed. The second exhibit—(Pl.Exh. 20)—which influenced this court is a note written by George Kefalos, who is one of the plaintiffs. Mr. Kefalos testified that this note was made during a telephone call with the defendant concerning the Parker litigation. (See Tr. p. 116). Contained in the note is the following statement: "not intd to deprive of sh of proceeds in lawsuit." Mr. Kefalos testified that this sentence meant that "HE—(defendant)—says that it's not my intention to deprive you—(plaintiffs)—of your share of the proceeds in the lawsuit." (See Tr. p. 116). This court finds that these two exhibits are strong indications that the parties entered into a fee-splitting contract as the plaintiffs contend. The Supreme Court of South Carolina has held that if acceptance is given by telephone, the place of contracting is where the acceptor speaks. *O'Briant v. Daniel Construction Co.*, 279 S.C. 254, 305 S.E.2d 241, 243 (1983). Based thereon, this court finds that the place of contracting here was the State of California, and that California law shall apply to that contract.

■ The second legal issue to be decided herein is whether the fee-splitting contract was barred by California's Rules of Professional Conduct. The defendant argues that

Rule 2–108[1], entitled "Financial Arrangements Among Lawyers," of California's Rules of Professional Conduct, prohibits the division of a fee among lawyers if the client has not consented in writing to such division. The parties admit that Mrs. Parker never consented to the fee-splitting arrangement in writing. In *Cazares v. Saenz*, 208 Cal.App.3d 279, 256 Cal.Rptr. 209, n. 5 (1989), the California court held that Rule 2–108 exists solely for the benefit of the client, who was not a party to that action, but that court made no further comment on the effect of the parties' failure to comply with the rule. As in *Cazares*, Mrs. Parker, the client, is not a party to this suit, and since the rule exists only for the benefit of the client, this court finds that Rule 2–108 should not be applied so as to bar the fee-splitting arrangement between the parties herein.[2]

■ As to damages sustained by plaintiffs, there is some controversy about the net fee received by the defendant. The total amount of recovery in the case was $1,080,423.37. The client was paid $610,000.00, leaving a balance of $470,423.37. The defendant claims he incurred expenses in the amount of $45,413.51 (See Def. Ex. 2). The plaintiffs contend the defendant incurred a lesser amount of expenses, but this court has decided to accept the defendant's contention that his expenses were $45,413.51; therefore, the net fee was $425,009.86. The contract which this court has found to be in effect entitles the plaintiffs to ⅓ of the net fee, which is $141,669.95.

■ Plaintiffs additionally contended that, if a contract did not exist between the parties, they were entitled to quantum meruit damages. In the event that this court's decision is reversed by a higher court, which finds that the contract which was entered into between plaintiffs and defendant is unenforceable as against public policy because it violated California's Rules of Professional Conduct, this court, *in the alternative*, finds that the plaintiffs are entitled to quantum meruit damages. Even if the contract is deemed to be unenforceable, this court holds that the plaintiffs are entitled to quantum meruit damages because the conduct which makes the contract itself unenforceable was neither *malum in se* nor *malum prohibitum*, but was a simple failure to have the agreement approved in writing by the client. The record is barren of any evidence that Mrs. Parker would not have approved the agreement had she been requested to do so. *See, Baca v. Padilla*, 26 N.M. 223, 190 P. 730 (1920); 17A Am.Jur.2d, S. 322, p. 325, n. 66.

■ The amount of quantum meruit damages must be determined under California law. A proportional fee due to a law firm for services performed under a contingency agreement may be determined by calculating a fraction, with the hours of legal services rendered by that firm— (plaintiffs here)—as the numerator, the denominator being the aggregate hours rendered by all attorneys involved. *Cazares v. Saenz*, supra. This fraction, if multiplied by the total fee earned under the contract, yields a reasonable fee to the plaintiffs here under a quantum meruit theory.

There has been much controversy as to the number of hours expended in the Parker case by each party to this action. The plaintiffs claim that they expended a total of 550 hours. The defendant claims he expended 2,360 hours, after adjustment for typographical errors. This court has re-

---

1. The pertinent sections of Rule 2–108 are set out below:
   (A) A member of the State Bar shall not divide a fee for legal services with another person licensed to practice law who is not a partner or associate in the member's law firm or law office, unless:
   (1) The client consents in writing to employment of the other person licensed to practice law after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and

   (2) The total fee charged by all persons licensed to practice law is not increased solely by reason of the provision for division of fees and does not exceed reasonable compensation for all services they render to the client.

2. In addition, this court has some reservations about whether California's professional conduct rules would apply to South Carolina attorneys not practicing law in California.

viewed both parties objections to the hours claimed, and since it is impossible for this court to determine the exact number of hours expended by each party, it has concluded that the hours above set forth shall be utilized as the best and most reasonable approximations available. Based on this factual determination, the total number of hours expended by both parties on the Parker case was 2,910, which will be the denominator in the fraction, the numerator being 550 hours expended by the plaintiff. The computed fraction is 18.9%, and when multiplied by the total fee—($425,009.86)—results in the plaintiffs being entitled to $80,326.86 in quantum meruit damages. Based on the foregoing it is

ORDERED, that the plaintiffs be, and they hereby are, awarded judgment on the contract claim, including pre-judgment interest[3], against the defendant in the amount of $185,206.58, plus post-judgment interest at the legal rate from the date hereof.[4]

IT IS FURTHER ORDERED, that, *in the alternative*, in the event this court's decision as to contract damages is reversed, the plaintiffs be, and they hereby are, awarded judgment on the quantum meruit claim, including pre-judgment interest[5], against the defendant in the amount of $105,012.13, plus post-judgment interest at the legal rate from the date hereof.

IT IS SO ORDERED.

---

**3.** The interest rate has been determined in accordance with this court's decision in *M.B.A.F.B. Federal Credit Union v. Cumis Ins. Soc.*, 507 F.Supp. 794 (1981), affirmed in 681 F.2d 930 (1982), in which this court held that pre-judgment interest should be determined, not according to the legal rate provided by statute, but at a rate that would compensate the plaintiff for the delay in recovering damages, when consideration is given to the state of the money market during the years for which pre-judgment interest is to be allowed. This court has computed an average rate of interest for the time period beginning November 30, 1988, the settlement date of the Parker case, and ending on the date of this order. The rates were obtained from a table of T–Bill rate changes, which is available from the Clerk of Court's office. The average rate has been determined to be 6.54%. Damages with pre-judgment interest is computed as follows:

$141,669.95 at 6.54% from 11/30/88 to 2/22/93 = $185,206.58.

**4.** See *Quesinberry, etc. v. Life Insurance Company of North America, et al.*, 987 F.2d 1017 (4th Cir.1993), as to awarding post-judgment interest on a pre-judgment interest award.

**5.** Again, this court has used the same rate of interest, and same time period, as that used in Footnote 3 of this order, to compute damages and interest as follows:

$80,326.86 at 6.54% from 11/30/88 to 2/22/93 = $105,012.13.