**JOHNSON PRODUCTS CO., INC., and Johnson Products of Nigeria, Ltd., Plaintiffs,**

v.

**M/V LA MOLINERA, her engines, boilers, etc., in rem; Caribbean Bulk Carriers, Ltd., International Customs Service, Inc., and Nigerian Star Line, Defendants.**

**No. 85 Civ. 371 (JEL).**

United States District Court, S.D. New York.

Oct. 4, 1985.

Haight, Gardner, Poor & Havens, New York City, for plaintiffs.

Thacher Proffitt & Wood, New York City, for defendant Nigerian Star Line.

Marvin Eschen, Jericho, Long Island, for defendant International Customs Service, Inc.

## MEMORANDUM OPINION

LUMBARD, Circuit Judge:*

Defendant International Customs Service ("ICS") moves to dismiss on the ground that plaintiffs' claims against ICS are not within the admiralty and maritime jurisdiction of the federal courts. *See* 28 U.S.C. § 1333. First, regarding plaintiffs' claim under § 10(d)(1) of the Shipping Act of 1984 ("the 1984 Act"), 46 U.S.C. § 1709(d)(1), ICS argues that this Court has no jurisdiction under that provision and, alternatively, that the plaintiffs have failed to state a claim under the 1984 Act or its predecessor. Second, ICS argues that plaintiffs' tort claims, which are based on ICS's alleged fraud and negligence, are not within the Court's admiralty and maritime jurisdiction because they derive essentially from an agency relationship—not a maritime contract—between the plaintiffs and ICS.

Stated briefly, the relevant facts as claimed in the pleadings are as follows. In

---

* Sitting by designation.

mid-December, 1983, plaintiff Johnson Products of Chicago ("JPC") contacted ICS, a freight forwarder and customs house broker, with regard to shipping certain personal care products to plaintiff Johnson Products of Nigeria ("JPN"). Specifically, ICS was to obtain quotes from overseas carriers regarding the shipment, and relay the proposed terms to JPC. After receiving these quotes, JPC chose for the job Container Overseas Agency ("COSA"), a non-vessel-operating common carrier. ICS subsequently engaged COSA who, in turn, contracted with defendant Nigerian Star Line ("NSL"), which ultimately carried the goods. Pursuant to a freight invoice, JPC paid ICS $145,209.50 for effecting the shipment; the invoice was accompanied by an allegedly false and fraudulent bill of lading prepared by COSA.

JPC's goods were shipped aboard the M/V Molinera, which arrived in Lagos, Nigeria in early February, 1984. Defendant NSL refused to release the containers of goods to JPN, allegedly because COSA had failed to pay NSL out of the money it received from JPC. JPC alleges that it made a variety of payments, under protest, to NSL in attempts to secure release of the goods. The goods were ultimately released sometime in April 1984, after JPC allegedly paid NSL an additional $111,000 in shipping charges.

Plaintiffs originally brought this action for damages incurred by the delay against defendants ICS and NSL, as well as the ship Molinera and her owner, Carribean Bulk Carriers, Ltd. The action against the ship and her owner was subsequently discontinued without prejudice. Plaintiffs were unable to join common carrier COSA as defendant, because it had filed for bankruptcy in May, 1984. The complaint, filed in January, 1985, alleged that JPC had been subjected to a variety of frauds and misrepresentations, including those detailed above and others not relevant to the instant motion. In August, 1985, defendant ICS moved to dismiss the claims against ICS for lack of subject matter jurisdiction.

■ The Court first turns to plaintiffs' claim under § 10(d)(1) of the Shipping Act of 1984. The Act applies only to conduct occurring after March 20, 1984, *see* 46 U.S.C. § 1719(e)(2)(B), a date that falls in the middle of the events that led to this action. ICS argues that plaintiffs seeking reparations for injuries caused by violations *either* of section 10 of the 1984 Act or of its predecessor, section 17 of the Shipping Act of 1916 ("the 1916 Act"), 46 U.S.C. § 816, are compelled to bring their actions before the Federal Maritime Commission ("FMC"). The Court need not address the question of the FMC's exclusive jurisdiction over the two Shipping Acts, because it finds that the complaint fails to set forth a cause of action under either Act.

Section 10 of the 1984 Act (which is nearly identical to section 17 of the 1916 Act) provides that no ocean freight forwarder "may fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property." 46 U.S.C. § 1709(d)(1). JPC argues that ICS's alleged frauds and misrepresentations regarding the shipment and the behavior of COSA constitute a "failure" cognizable under section 10 or its predecessor section. The legislative history of the 1984 Act makes clear, however, that behavior such as fraud and negligence does not come within the ambit of the Act. *See* H.R.Rep. No. 98–53, 98th Cong., 2d Sess. 35, *reprinted in* 1984 U.S.Code Cong. & Ad.News 167, 200. Furthermore, the Court is not aware of any cases that hold fraud or negligence to be a violation of section 17 of the 1916 Act.

■ The Court now turns to plaintiffs' claims based on alleged frauds and misrepresentations. Admiralty jurisdiction applies both to maritime tort and to maritime contracts. Plaintiffs' claims for fraud and misrepresentation against ICS, however, derive from what essentially amounts to an agency agreement between JPC and ICS— the agreement was not a maritime contract in the traditional sense. As freight for-

warder, ICS performed a variety of services preliminary to JPC's procurement of an actual carrier. Although the *carrier's* obligation to the shipper certainly comes within the Court's admiralty jurisdiction, the obligations arising out of preliminary procurement of and arrangement for carriage contracts do not. *See Peralta Shipping Corp. v. Smith Johnson (Shipping)*, 739 F.2d 798 (2d Cir.1984); *P.D. Marchessini & Co. v. Pacific Marine Corp.*, 227 F.Supp. 17 (S.D.N.Y.1964) (Weinfeld, J.). Plaintiffs argue that the requisite "maritime contract" here was a fraudulent bill of lading, which was presented to JPC by ICS. Although a bill of lading itself may be a maritime contract, the bill in this case was prepared by COSA (who is not a party to this action) and not by ICS; ICS merely passed the bill on to JPC. The forwarding of a bill of lading does not in itself create a maritime contract between ICS and JPC. *Cf. Peralta, supra*, 739 F.2d at 803 (noting that an agent's supervision over maritime contracts does not create maritime jurisdiction as to the agent). Therefore, because any contract between JPC and ICS was not a maritime contract, there is no admiralty or maritime jurisdiction over JPC's claims against ICS.

Although the Court concludes that its admiralty jurisdiction does not encompass JPC's action against ICS, it notes that the pleadings indicate that diversity jurisdiction probably exists in this case. ICS is a California corporation, with California as its principal place of business. NSL is a foreign corporation incorporated in Nigeria. JPC is an Illinois corporation with its principal place of business in that state. It is well settled that, pursuant to 28 U.S.C. § 1653, the court may allow amendments of the pleadings to cure defective allegations of jurisdiction. *See, e.g., Cox v. Livingston*, 407 F.2d 392, 393 (2d Cir.1969). Because JPC's claims are best tried in a single forum, the court will exercise its discretion to hear in diversity this claim not otherwise within its admiralty jurisdiction. *See Doran v. Lee*, 287 F.Supp. 807 (W.D. Pa.1968); Wright & Miller, *Federal Prac-*

*tice and Procedure*, § 1314, at 455 (1st ed. 1969).

Therefore, the Court will dismiss the action against ICS for lack of admiralty jurisdiction, but allow plaintiffs leave to amend to plead jurisdiction based on diversity of citizenship.