**CALIFORNIA CARTAGE COMPANY, INC., Containerfreight Terminals Company, and Hawaiian Pacific Freight Forwarding, Petitioners,**

v.

**UNITED STATES of America, and Federal Maritime Commission, Respondents.**

**Pacific Maritime Association, and International Longshoremen's and Warehousemen's Union, Respondents-Intervenors.**

**No. 85–7508.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1986.

Decided Oct. 14, 1986.

Louis E. Wolcher, Pettit & Martin, San Francisco, Cal., for petitioners.

Lillick, McHose & Charles, R. Frederic Fisher, Lawrence N. Minch, San Francisco, Cal., for Pacific Maritime Ass'n.

Norman Leonard, Leonard, Carder & Zuckerman, San Francisco, Cal., for Intern. Longshoremen's and Warehousemen's Union.

Robert D. Bourgoin, Gen. Counsel, John M. Binetti, Gordon M. Shaw, Federal Maritime Com'n, Washington, D.C., for respondents.

Before CHOY, Senior Circuit Judge, ALARCON and BEEZER, Circuit Judges.

CHOY, Senior Circuit Judge:

California Cartage Company, Inc., Containerfreight Terminals Company, and Hawaiian Pacific Freight Forwarding ("appellants") challenge an order issued by the Federal Maritime Commission ("Commission") denying them standing to challenge an assessment agreement under the Shipping Act, 46 U.S.C. § 801 et seq.

Because the Shipping Act of 1984 eliminated the appellants' standing to sue, and because manifest injustice would not result from application of the new law, we affirm the Commission's dismissal of the action.

## BACKGROUND

In *California Cartage Co. v. United States,* 721 F.2d 1199 (9th Cir.1983) (*"Cal Cartage I"*), we reversed a ruling by the Commission that the appellants lacked standing under the Shipping Act to challenge an assessment agreement ("LM–81"), entered into by intervenors Pacific Maritime Association, an association of on-dock and off-dock container freight operators, and the International Longshoremen's and Warehousemen's Union. The appellants challenged LM–81 under section 814 of the Shipping Act. This provision empowered the Commission to disapprove, cancel, or modify assessment agreements found to be "unjustly discriminatory or unfair as between carriers, shippers, or ports, or to operate to the detriment of the commerce of the United States...." 46 U.S.C. § 814 (1982).

In *Cal Cartage I* we determined that the appellants lacked standing to assert a claim on the ground that LM–81 was discriminatory. 721 F.2d at 1205. We also discussed two other bases for the appellants' standing to challenge LM–81: 1) 46 U.S.C. § 821, which allows "[a]ny person" to file with the Commission "a sworn complaint setting forth any violation of this chapter," and 2) the "zone of interests" created by section 814's "detriment to commerce" test. 721 F.2d at 1203–06. We held that the appellants, "as part of the network that makes up waterborne commerce, are within section 814's zone of protected interests and have standing to challenge an assessment agreement under the detriment to commerce standard." 721 F.2d at 1206.

In 1984, shortly after the *Cal Cartage I* decision, Congress amended the Shipping Act, eliminating the "detrimental to commerce" basis for invalidating assessment agreements. Under the Shipping Act of 1984, the Commission is empowered to disapprove assessment agreements only if they are found to be "unjustly discriminatory or unfair as between carriers, shippers, or ports." 46 U.S.C.A. § 1704(d) (West Supp.1986). In addition, the Shipping Act of 1984, prohibits application of any provision of the Shipping Act to assessment agreements except sections 1704(d) and 1706(a) of the 1984 Act.

On remand, the Commission ruled that in light of the Shipping Act of 1984, the appellants no longer had standing or a cause of action to challenge LM–81. However, the Commission also determined that denying the appellants potential reparations for an unlawful "detriment to commerce" would constitute "manifest injustice," and that the appellants were therefore entitled to a decision on the merits. The Commission ruled that the appellants were not entitled to pursue the remedies of assessment adjustments or retroactive or prospective disapproval of LM–81.

The appellants waived their right to seek reparations on their own behalf and persisted in their claim for invalidation of LM–81 and reparations on behalf of their customers. The Commission then ruled that appellants could not assert the rights of their customers and issued a final order dismissing the action.

## DISCUSSION

### A. *Our Holding in Cal Cartage I.*

The appellants argue that our *Cal Cartage I* decision set forth two independent, alternative bases for standing: 1) the zone of interests "detriment to commerce" basis, and 2) the "any person" basis of section 821. They contend that even if the Shipping Act of 1984 eliminated the "detriment to commerce" basis, they still have standing to sue under the "any person" provision of section 821.

Our decision in *Cal Cartage I* did not set forth two independent bases for standing. Rather, we determined that appellants' satisfaction of constitutional standing prerequisites alone was insufficient to give them standing to challenge assessment agreements and made clear that the appellants must also satisfy the prudential "zone of interests" test. We held: "Petitioners' assertions that they have suffered 'injury in fact' are insufficient to establish standing. While injury in fact is a crucial element of standing, petitioners must also satisfy the 'zone of interest' test set out in text." 721 F.2d at 1203 n. 3 (citations omitted). *See also id.* at 1205 n. 9. To have standing to

challenge LM–81, the appellants must fall within the zone of interests protected by section 821.

### B. *Effect of the Shipping Act of 1984.*

■ The Shipping Act of 1984, like the earlier Shipping Act, empowers the Commission to disapprove, cancel, or modify assessment agreements upon complaint filed. The appellants contend that to determine who can file such a complaint under the Shipping Act of 1984, the court must refer, as it did in *Cal Cartage I*, to the "any person" provision of the Shipping Act, 46 U.S.C. § 821. However, by stating that *only* sections 1704(d) and 1706(a) of the Shipping Act of 1984 apply to assessment agreements, section 1704(d) precludes application of the "any person" provision.

Despite this clear and explicit language, the appellants contend that Congress did not intend to preclude application of the "any person" standard to section 1704(d). However, they cite no legislative history that supports this contention, other than general statements that section 821 should be broadly construed. We are unpersuaded by their argument.

The appellants also draw a substantive/procedural dichotomy for determining the preclusive effect of section 1704(d). They argue that Congress intended to preclude only the substantive provisions of the Shipping Act, such as rate, conference, and terminal regulations, and not procedural matters governing standing.

The legislative history lends no support to the appellants' substantive/procedural analysis, which we decline to apply here.

### C. *Inapplicability of Savings Provision.*

■ The appellants also contend that their standing and cause of action are preserved under the savings provision of the Shipping Act of 1984. The savings provision preserves suits 1) "filed before March 20, 1984" and 2) "with respect to claims arising out of conduct engaged in before March 20, 1984, filed within 1 year after March 20, 1984." 46 U.S.C.A. § 1719(e)(2).

■ However, the Commission has interpreted section 1719(e) as "intended only to preserve antitrust actions;" it has "no application to cases pending before the Commission." 49 Fed.Reg. 21,798 n. 1 (1984). Since the Commission is charged with administration of the Shipping Act, its interpretation of the Act is entitled to considerable deference. *Takazato v. Federal Maritime Commission*, 633 F.2d 1276, 1278 (9th Cir.1980).

The Commission's interpretation of section 1719(e) is reasonable in light of the legislative history, which provides as follows:

> Subsection (e) contains two savings provisions. One provides that service contracts entered into before the date of enactment may remain in full force and effect and are given until 15 months after enactment to comply with the requirements in this bill. This should permit sufficient time to meet all transitional requirements. The other savings provision is intended to preserve the rights of parties to *lawsuits* that are filed before the date of enactment. Since section 7(a)(7) of the bill makes the antitrust laws inapplicable to any agreement, modification, or cancellation that was approved by the Federal Maritime Commission under present law, there were some who thought this would adversely affect pending *lawsuits*. The intent of this savings provision is to permit such *suits* to continue to conclusion as if the legislation were never enacted.

H.R.Rep. No. 53, Pt. 1, 98th Cong., 1st Sess. 39, *reprinted in* 1984 U.S.Code Cong. & Admin.News 167, 204 (emphasis added).

D. *No Manifest Injustice Will Result.*

■ Generally, a new statute applies to cases pending on the date of its enactment unless manifest injustice would result or there is a statutory directive or legislative history to the contrary. *Bradley v. School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In determining whether manifest injustice results, we must consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019. *See also City of Great Falls v. U.S. Department of Labor*, 673 F.2d 1065, 1068–69 (9th Cir.1982).

■ The Commission determined that manifest injustice would result if the appellants were deprived of reparation for any injury they suffered due to violation of the Shipping Act's "detriment to commerce" standard. However, the appellants waived their right to reparations and instead sought disapproval of LM–81 and reparations on behalf of their customers.

The Commission's analysis in determining that the appellants were not entitled to retroactive or prospective disapproval of LM–81 is sound. The appellants have no absolute right to invalidation of the agreement. No legislative mandate preserves the appellants' requested relief. As discussed earlier, lawsuit savings provision of the Shipping Act of 1984, 46 U.S.C. § 1719(e)(2), applies only to court actions and not to pending administrative cases. The Commission properly declined to invalidate LM–81 under a now defunct statute and contrary to existing law.

The appellants have not demonstrated that manifest injustice will ensue if the Shipping Act of 1984 is applied to deprive them of disapproval of LM–81. The appellants contend that denial of standing will deprive them of an antitrust remedy. However, because no case has yet interpreted the antitrust immunity provision in the context of an automatically approved assessment agreement, that result is uncertain. *See Cal Cartage I*, 721 F.2d at 1204 n. 7. Moreover, because the antitrust immunity implications of the Shipping Act are not properly before the court at this time, we do not reach the issue.

The appellants also contend that because the statute of limitation for enforcement of the Shipping Act has run, dismissal of their action would bar the claims of those shippers who *would* have standing to challenge the assessment agreement as unjustly discriminatory. The appellants argue that these shippers relied on the pendency of this proceeding to protect their rights and

consequently declined to bring their own actions for relief. However, apart from the testimony of one shipper (Testimony of John Merchant, Tr. No. 35, pp. 224–43), appellants presented no evidence to support their contention that other shippers, carriers, or ports relied on the appellants to protect their rights. Moreover, the very shippers whose claims the appellants assert here are Pacific Marine Association members, who, as intervenors in this action, resist appellants' petition to invalidate LM–81.

Manifest injustice would not result from application of the Shipping Act of 1984.

## CONCLUSION

Because the appellants lack standing under the "any person" provision of section 821, they cannot assert the rights of their customers to reparations for LM–81's "unjustly discriminatory" effect. Moreover, we have already determined that appellants cannot assert standing under the "unjustly discriminatory" provisions of the Shipping Act. *Cal Cartage I,* 721 F.2d at 1205. The appellants are therefore precluded from seeking invalidation of LM–81 and reparations on behalf of their customers.

The Commission's dismissal of appellants' action is AFFIRMED.