SEAWINDS LIMITED, Plaintiff,

v.

NEDLLOYD LINES, B.V.; Royal Nedlloyd Group, N.V.; KNSM Lines, B.V.; American President Companies, Ltd.; American President Lines, Ltd.; Sea–Land Corporation; Sea–Land Service, Inc.; Dampskibsselskabet AF 1912 A/S; A/S Dampskibsselskabet Svenborg; A.P. Moller–Maersk Line; Hapag–Lloyd Aktingesellschaft; and Intercontinental Transport (ICT) B.V., Defendants.

No. C–86–2409 DLJ.

United States District Court, N.D. California.

June 24, 1987.

Thomas R. Fahrner, of Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., for plaintiff.

M. Laurence Popofsky, Peter A. Wald, and Andrea G. Asaro, of Heller, Ehrman, White & McAuliffe, and Charles S. Donovan, of Walsh, Donovan, Lindh & Keech, San Francisco, Cal., for defendants Nedlloyd Lines, B.V., Royal Nedlloyd Group, N.V., and KNSM Lines, B.V.

John F. McLean, of Pillsbury, Madison & Sutro of San Francisco, Cal., for defendants American President Companies, Ltd. and American President Lines, Ltd.

Terry M. Gordon, of Lasky, Haas, Cohler & Munter, San Francisco, Cal., for defendants Sea–Land Corp. and Sea–Land Service, Inc.

Marc J. Fink, of Dow, Lohnes & Albertson, Washington, D.C., and Gary S. Anderson, of Farella, Braun & Martel, San Francisco, Cal., for defendants Dampskibsselskabet AF 1912 A/S, A/S Dampskibsselskabet Svenborg, A.P. Moller–Maersk Line, and Hapag–Lloyd Aktiengesellschaft.

Nathan Lane III, of Graham & James, San Francisco, Cal., for defendant Intercontinental Transport (ICT) B.V.

## ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

JENSEN, District Judge.

On November 5, 1986 this Court heard oral argument on defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(1) & (6). All parties appeared through their respective counsel. Because the motion raises a question of first impression—application of section 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a), to the "savings provisions" of the Shipping Act of 1984, 46 U.S.C. §§ 1701–1720—the Court requested supplemental briefing. The parties have filed their supplemental memoranda, and the Court has considered carefully all materials submitted, as well as the parties' arguments advanced at the hearing. For the reasons set forth below, the Court is persuaded that the policies embodied in the Shipping Act mandate dismissal of this action.

## I. FACTS.

Plaintiff Seawinds Limited ("Seawinds") bases this private maritime antitrust action on an alleged conspiracy to drive it out of the transpacific container shipping business. Seawinds, incorporated in Hong Kong in late 1982, engaged in the transpacific container shipping business between April 1983 and October 1984. On October 22, 1984 plaintiff filed a petition in the Northern District of California for Chapter 11 bankruptcy. Subsequently, on May 9, 1986, it commenced this action, alleging that defendants, in conjunction with various non-defendants, conspired to put it out of business.

The defendants may be classified in two groups. The "Nedlloyd defendants" consist of three Netherlands corporations: Nedlloyd Lines, B.V. ("Nedlloyd"), the Royal Nedlloyd Group, N.V. ("Nedlloyd Group"), and KNSM Lines, B.V. ("KNSM"). The nine "non-Nedlloyd defendants" consist of four American corporations, American President Companies, Ltd. ("APC"), American President Lines, Ltd. ("APL"), Sea–Land Corporation ("SLC"), and Sea–Land Service, Inc. ("SLS"); three Danish corporations, Dampskibsselskabet AF 1912 A/S, A/S Dampskibsselskabet Svenborg, and A.P. Moller–Maersk Line; one German corporation, Hapag–Lloyd Aktiengesellschaft; and one Netherlands corporation, Intercontinental Transport (ICT) B.V. ("ICT"). With the possible exception of ICT, all the non-Nedlloyd defendants appear to be involved in the transpacific container shipping business.

The complaint alleges federal antitrust and pendent state law claims. In brief, Seawinds alleges that defendants and others conspired to drive it out of the transpacific container shipping market by fixing reduced tariff rates, inducing suppliers and potential customers to boycott plaintiff, engaging in unfair practices, and breaching

fiduciary duties. Counts One through Three allege violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, for which plaintiff seeks damages under 15 U.S.C. § 15. The remaining four counts allege pendent state claims for breach of contract, breach of fiduciary duty, conspiracy to violate fiduciary duties, and tortious interference with contractual relations to drive plaintiff out of business. All seven counts are based on a common core of charging allegations, which recount conduct occurring between late 1982 and March 15, 1984.[1]

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim. Defendants submit that the challenged conduct falls within the purview of the Shipping Act of 1984, 46 U.S.C. §§ 1701–1720 ("the Act"), which abolished private antitrust actions for conduct prohibited by the Act, and instead vested in the Federal Maritime Commission exclusive jurisdiction over damage claims based on such conduct. They contend that because Seawinds' claims are covered by the Act, the Court is without jurisdiction over this action. Nor, they argue, does the action fall within the narrow, one-time exception embodied in the Act's "savings provisions."

Seawinds, on the other hand, contends that the 1984 Act does not even apply to its claims because they rest upon conduct occurring prior to the statute's date of enactment, March 20, 1984. Alternatively, even if the Act applies, plaintiff argues, this action is "saved" from the Act's substantive provisions because it was filed within the exemption period set forth in 46 U.S.C. § 1719(e)(2)(B), as "boosted" by Bankruptcy Code § 108(a), which extends by two years the point at which a bankrupt debtor's cause of action would otherwise have expired. Under plaintiff's analysis, this private antitrust suit is specifically exempted by the terms of the Act, as read in conjunction with the applicable provision of the Bankruptcy Code.

## II. DISCUSSION.

The parties thus raise two issues: the applicability of the 1984 Shipping Act to pre-Act conduct, and the applicability of section 108(a) of the Bankruptcy Code to the savings provisions of the 1984 Shipping Act. The Court takes up each issue in turn. First, however, it is useful to set forth the relevant provisions of the Act, as well as excerpts from its legislative history.

### A. The Shipping Act of 1984.

The 1984 Act, enacted on March 20, 1984 as Public Law 98–237 (98 Stat. 67), effected various changes in the law of international ocean commerce while carrying forward several provisions of the otherwise repealed Shipping Act of 1916, 46 U.S.C. § 801 *et seq. See Compagnie Generale Maritime v. S.E.L. Maduro (Florida), Inc.*, 23 S.R.R. 1085, 1087 & n. 5 (ALJ Opn. FMC 1986). Of particular note here are changes pertaining to maritime antitrust claims.

The Shipping Act of 1984 expressly bars private antitrust suits based on conduct prohibited by the Act. Section 7(c)(2) of the Act provides:

No person may recover damages under section 15 of Title 15, or obtain injunctive relief under section 26 of Title 15, for conduct prohibited by this chapter.

46 U.S.C. § 1706(c)(2). Prohibited acts are enumerated in 46 U.S.C. § 1709. In place of private antitrust actions the Act establishes an administrative complaint process before the Federal Maritime Commission ("FMC"). "Any person" may file a sworn complaint with the FMC to obtain reparation for injuries caused by violations of the Act. 46 U.S.C. § 1710(a). There is a three-year statute of limitation for such complaints. *Id.* § 1710(g). The FMC is authorized to award actual damages (and, in appropriate circumstances, double damages) as well as attorney's fees. *Id.* Injunctive relief is available to either the

---

1. Complaint ¶¶ 19–23, 42, 54, 61, 67. As to the state claims, however, plaintiff alleges conduct extending beyond the March 15, 1984 date. *See* Complaint ¶¶ 49, 50, 56, 64, 72.

Commission or the complainant. *Id.* § 1710(h).

The Act does not impose an absolute bar on private maritime antitrust actions as of the date of enactment. Rather, it contains "savings provisions" which limit application of the Act with respect to certain pending and accrued causes of action. Section 20(e)(2) provides:

This Act and the amendments made by it shall not affect any suit—

(A) filed before March 20, 1984; or

(B) with respect to claims arising out of conduct engaged in before March 20, 1984, filed within 1 year after March 20, 1984.

46 U.S.C. § 1719(e)(2).

These substantive provisions must be understood in the context of the Act's legislative history. Among the major purposes to be accomplished by the Shipping Act of 1984 were clarification of antitrust immunity for international ocean carriers, vesting in the Federal Maritime Commission of exclusive jurisdiction over administration of the Shipping Act's provisions, and minimizing government involvement in regulation of shipping operations. *See* Report of the House Committee on Merchant Marine and Fisheries, H.R.Rep. No. 53(I), 98th Cong., 1st Sess. 3–4, *reprinted in* 1984 U.S.Code Cong. & Ad.News 167, 168–69 [hereafter "Report (I)"].

The Shipping Act of 1984 was intended to clarify and broaden the antitrust immunity provided by the previous Shipping Act of 1916. That statute had established the United States Shipping Board (predecessor of the FMC) to regulate the ocean shipping industry, setting out a comprehensive regulatory scheme and granting limited immunity to ocean shipping lines. *See* 46 U.S.C. § 801 *et seq.* In the following years judicial interpretations narrowed the scope of this antitrust immunity and created parallel jurisdiction between the regulatory agency and the federal courts in certain cases. *See, e.g., Sabre Shipping Corp. v. American President Lines, Ltd.,* 285 F.Supp. 949 (S.D.N.Y.1968), *aff'd on other grounds sub nomine Japan Line Ltd. v. Sabre Shipping Corp.,* 407 F.2d 173 (2d Cir.), *cert.*

*denied,* 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239 (1969).

Congress evinced growing concern with the "regulatory uncertainty" attendant on the courts' assumption of parallel jurisdiction over the subject matter of the 1916 Act. The Shipping Act of 1984 was designed in part to clarify the remedies available and the proper forum for pursuing them. Thus, the legislative history to the Act reflects Congress's intent that the "remedies and sanctions provided in the Shipping Act of [1984] will be the exclusive remedies and sanctions for violation of the act." Report (I), *supra,* at 12, 177; *see also* Letter of Secretary of Transportation Drew Lewis, *reprinted in* Report (I), *supra,* at 45, 210. With the Act, Congress removed the private right of action for antitrust violations based on conduct prohibited in the Act. 46 U.S.C. §§ 1706(c)(2), 1710(a). In order to counterbalance the elimination of the deterrent force of antitrust laws, however, Congress empowered the FMC to order reparations up to double actual damages, and provided a range of sanctions and penalties for prohibited conduct. *See* Report (I), *supra,* at 19, 184. As the House Report stated, "the FMC is provided exclusive jurisdiction in administering all of the provisions of the Shipping Act as they relate to international liner shipping regulations." *Id.* at 3, 168.

The Committee on Merchant Marine and Fisheries, which reported out the bill, stated its confidence that it had achieved the Administration's expressed objective of ensuring that

members of the ocean liner industry should be free to conduct their business as they see fit, free of government intervention in the form of unnecessary regulations, vague standards, or threatened penalties under changing interpretations of antitrust laws.

Report (I), *supra,* at 25, 190.

It thus appears that Congress intended to clarify shippers' potential liability for conduct previously covered by the antitrust laws, to restrict remedies and sanctions therefor to those enumerated in the 1984 Act, and to vest exclusive jurisdiction in the

FMC for the oversight of this remedial scheme. By limiting jurisdiction to the FMC, and restricting that Commission's regulatory scope, Congress implemented the goal of reducing government involvement in shipping operations. By removing the courts from this regulatory process, Congress removed the potential for continuing regulatory uncertainty.

### B. Applicability of the 1984 Act to Pre-Act Conduct.

■ Seawinds contends at the outset that the 1984 Act does not even apply to this action, which challenges only pre-Act conduct. Plaintiff notes that the Act provides that "[n]o person may recover damages [under federal antitrust laws] ... for conduct prohibited by this chapter." 46 U.S.C. § 1706(c)(2). But since "this chapter" (i.e., 46 U.S.C. § 1701 et seq.) did not prohibit defendants' conduct at the time it occurred, Seawinds urges, the Act is by its own terms inapplicable.[2] Perhaps supporting plaintiff's position is the remark of one district court that "[t]he Act applies only to conduct occurring after March 20, 1984." Johnson Products Co. v. M/V La Molinera, 619 F.Supp. 764, 766 (S.D.N.Y.1985).[3]

■ Although plaintiff's syllogism is at first blush appealing, it ignores the plain language of the statute. If the 1984 Act did not apply at all to pre-Act conduct, the provision of § 1719(e)(2)(B)—that suits "arising out of conduct engaged in before March 20, 1984" are exempt from the Act's substantive provisions if "filed within one year after March 20, 1984"—would be mere surplusage. It is of course a cardinal

rule of statutory construction that a court must avoid interpreting a statute in such a way as to render any of its language meaningless. See, e.g., Yamaguchi v. State Farm Mutual Automobile Ins. Co., 706 F.2d 940, 947 (9th Cir.1983); United States v. Mehrmanesh, 689 F.2d 822, 829 (9th Cir.1982). The Court thus rejects plaintiff's interpretation, which would render meaningless the one-year "grace period" specified in subsection (e)(2)(B).

The evolution of the savings provision, section 1719(e)(2), buttresses this conclusion. The legislative history evinces concern with preserving pre-existing rights of action. The report of the House Committee on Merchant Marine and Fisheries expressed an intent to preserve all pending private antitrust lawsuits from the bar of the new Act. The report stated that this savings provision of subsection (e)(2)

> was intended to preserve the rights of parties to lawsuits that are filed before the date of enactment. Since section 7(a)(7) of the bill [46 U.S.C. § 1706(a)(6)] makes the antitrust law inapplicable to any agreement, modification, or cancellation that was approved by the Federal Maritime Commission under present law, there were some who thought this would adversely affect pending lawsuits. The intent of this savings provision is to permit such suits to continue to conclusion as if the legislation were never enacted.

Report (I), supra, at 39, 204. This concern evidently lay behind the language of 46 U.S.C. § 1719(e)(2)(A), which provides that the substantive provisions of the Act shall

---

**2.** The parties do not argue, and this Court does not decide, whether the 1984 Act retroactively imposes new standards of conduct or severer penalties, in the manner of an ex post facto law. Plaintiff alleges conduct violating sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Defendants argue that this conduct is proscribed by various sections of the 1984 Act. See Defendants' Joint Memorandum of Points and Authorities in Support of Motion to Dismiss 7–9. Far from objecting to application of the new statute, defendants assert that it controls this action.

**3.** In Johnson Products the district court dismissed plaintiff's Shipping Act claim for failure to state a claim because the allegations of fraud

and negligence did not fall within the substantive provisions of either the 1916 Shipping Act or its 1984 replacement. Johnson Products, 619 F.Supp. at 766. The court's remark that the 1984 Act applies "only to conduct occurring after March 20, 1984" was thus only a dictum. The court's statement may be intended to reflect the fact that the complaint before it, which was filed in January 1985, arguably qualified under the saving provision of § 1719(e)(2)(B). Most importantly, the statement is set forth without analysis. For the reasons discussed in the text below, the Court declines to follow the Johnson Products dictum.

not affect any suit filed before March 20, 1984.[4]

The House Committee on the Judiciary, however, intended a broader range of exemptions. The Judiciary Committee reported that it had added language to subsection (e)(2) "to make clear that, with respect to conduct occurring before the date of enactment of this bill, all remedies available at the time of the conduct will remain available after enactment." Report of the House Committee on the Judiciary, H.R. Rep. No. 53(II), 98th Cong., 1st Sess. 36, *reprinted in* 1984 U.S.Code Cong. & Ad. News 221, 256 [hereafter "Report (II)"]. The Committee explained:

> This change was made in response to testimony expressing concern that the operation of section 7(a)(7) [now providing antitrust immunity under 46 U.S.C. § 1706(a)(6)] could lead to denying persons injured under existing agreements the relief available under the law in effect at the time the conduct occurred. Section 7(a)(7) will alter the rights and remedies of the parties only with respect to conduct occurring after the date of enactment.

*Id.*

Significantly, the Judiciary Committee did not then have before it the version of the savings provisions which was ultimately enacted into law. Congress subsequently added the final phrase of subsection (e)(2)(B), cutting back the scope of exemption for suits based on conduct occurring before March 20, 1984. In place of the earlier exemption of all suits arising out of pre-Act conduct, the Act in its final form saves only those suits either filed before its enactment or arising out of pre-Act conduct *and* filed within one year after the date of enactment. 46 U.S.C. § 1719(e)(2)(A), (B). It thus appears that the legislative process finally produced a compromise with respect to subsection (e)(2)(B). Under this provision, private antitrust claims based on conduct occurring before enactment of the 1984 Act would remain unaffected—provided the actions were filed within a year after enactment of the 1984 Act.

■ Finally, the Court notes that the FMC has applied provisions of the Shipping Act of 1984 to agency complaints based on pre-Act conduct, consistent with the "manifest injustice" rule of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).[5] *See, e.g., California Cartage Co. v. Pacific Maritime Assn.,* 23 S.R.R. 420 (FMC 1985) (1984 Act applied to pre-Act conduct; new law eliminated both substantive cause of action and standing to claim invalidation of assessment agreement), *aff'd sub nomine California Cartage Co. v. United States,* 802 F.2d 353 (9th Cir.1986); *A & A International v. Kawasaki Kisen Kaisha, Ltd.,* 23 S.R.R. 1174 (FMC 1986) (1984 Act's three-year statute of limitation, rather than 1916 Act's two-year period, applied to complaint filed under 1984 Act on basis of 1983 conduct); *Compagnie Generale Maritime v. S.E.L. Maduro (Florida), Inc., supra* (1984 Act's statute of limitation applied to conduct allegedly violating both 1984 and 1916 Acts). The FMC's interpretation of

---

4. In fact, the restriction of § 1719(e)(2) to "suits" itself represented a narrowing of the exemptions provided by an earlier version of the 1984 Act, S. 1460, which would have exempted from the new Shipping Act "any rights and duties that matured, penalties that were incurred or proceedings that were commenced before the date of enactment of this Act." *See California Cartage Co. v. Pacific Maritime Assn.,* 23 S.R.R. 420, 423–24 (FMC 1985), *aff'd,* 802 F.2d 353 (9th Cir.1986).

5. A court is to apply the law in effect at the time it renders its decision, unless to do so would result in "manifest injustice." *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). A determination of manifest injustice rests on three considerations: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019; *see also Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801).

The FMC has determined that the applicability of the 1984 Act under the *Bradley* criteria is to be decided on a case-by-case basis under the facts of a given proceeding. *See Notice: Application of Shipping Act of 1984 to Formal Proceedings Pending Before Federal Maritime Commission on June 18, 1984,* 49 Fed.Reg. 21,798 (1984), 22 S.R.R. 976 (1984).

the 1984 Act, which merits "considerable deference," *California Cartage Co., supra*, 802 F.2d at 357, further persuades the Court that plaintiff errs in proposing that the 1984 Act cannot apply to pre-enactment conduct such as that alleged in its complaint.

### C. Bankruptcy Code Section 108(a).

■ Seawinds argues that even if the 1984 Act applies, section 108(a) of the Bankruptcy Code, 11 U.S.C. § 108(a), operates to extend the filing period set forth in the savings provision of the 1984 Act, thereby exempting this action from the Act's substantive provisions.

Title 11 U.S.C. section 108(a) provides: If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief. Section 108(a) thus establishes three requirements. First, the applicable nonbankruptcy law must "fix a period within which the debtor may commence" the action. Second, the debtor must file for bankruptcy before expiration of that period. Finally, the debtor must commence the action before expiration of the extension period. This statute applies to debtors as well as trustees. *In re Santa Fe Development and Mortgage Corp.*, 16 B.R. 165, 167 n. 1 (9th Cir.BAP 1981); *In re T.C.I., Ltd.*, 21 B.R. 876, 878 (Bankr.N.D.Ill.1982); *see also* 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights ... and powers ... of a trustee serving in a case under this chapter."). Since the filing of the petition for bankruptcy constitutes entry of an "order for relief" within the meaning of

the statute, *In re Glenn*, 760 F.2d 1428, 1437 n. 6 (6th Cir.), *cert. denied sub nomine Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), section 108(a) provides a "tolling period" of at least two years after the plaintiff-debtor files a petition for bankruptcy.

Section 108(a) and its predecessor, section 11(e) of the Bankruptcy Code, have been held to "preserve and extend" a debtor's right of action beyond the time when it would otherwise have expired. In *Engstrom v. De Vos*, 81 F.Supp. 854 (E.D. Wash.1949), the court construed section 11(e) to preserve the trustee's right to recover an alleged unlawful preference. The trustee sued under a state statute which allowed recovery of a preference made by an insolvent corporation. The statute limited the right of action, however, by requiring that the preference occur within four months of the date of application for appointment of the trustee, and that the action be commenced within six months thereafter. The court found that section 11(e) superseded these limitations. The court stated that section 11(e) was an exercise of Congress's broad power, in the field of bankruptcy, to alter both procedural and substantive rights. The court found that the trustee's right of action came into existence upon his application for appointment and continued under the statute for six months, at which time it would normally have expired. However, section 11(e) preserved and extended it for two years subsequent to adjudication of the debtor's status as bankrupt. *De Vos*, 81 F.Supp. at 859.

The *De Vos* rationale has been applied to section 108(a) of the Bankruptcy Code. *See In re T.C.I., Ltd., supra*, 21 B.R. at 879 (section 108(a) held to toll statutory time periods "even if the time periods constitute a condition precedent to asserting a cause of action").

Relying on these and other cases,[6] plaintiff argues that the savings provision of

---

**6.** The parties have cited the Court to numerous cases construing section 108 of the Bankruptcy Code. These cases demonstrate a clear trend of

applying section 108(a) to toll statutes of limitation in appropriate circumstances. None of these cases holds that section 108(a) operates to

the Shipping Act of 1984, 46 U.S.C. § 1719(e)(2)(B), "created" a right to file private antitrust actions in derogation of the otherwise applicable prohibition against such actions in 46 U.S.C. § 1706(c)(2); that this right "continued to exist" for one year; and that it would normally have expired at that time, except that section 108(a) of the Bankruptcy Code preserved and extended it for the period of two years. Seawinds argues that it has met the three requirements for application of section 108(a) in that it filed for bankruptcy on October 22, 1984 and commenced this action on May 9, 1986.

The parties dispute whether the savings provision of the 1984 Act constitutes a statute of limitation of the type section 108(a) is routinely held to toll, or a jurisdictional provision to which section 108(a) cannot be applied.[7] The question is not an easy one to answer.

It has been held that

[t]he purpose of a Savings Clause, unlike a Statute of Limitations ... is not to cut off stale claims. Rather, the Savings Clause is designed to avoid the disruption of ongoing deliberations that would be caused by a change in the applicable law.

*Wilson v. Turnage,* 750 F.2d 1086, 1091 (D.C.Cir.1984), *vacated on other grounds,* 755 F.2d 967 (D.C.Cir.1985). Here, of course, the 1984 Shipping Act changes applicable law by vesting exclusive jurisdiction of certain private antitrust claims with the FMC. From one perspective the Act's savings provisions might be deemed to provide an orderly transition from the old statutory scheme to the new; thus, as pointed out in *Turnage, supra,* all pending lawsuits are exempted from the Act's substantive provisions. Then, too, it is significant that the 1984 Act contains an express statute of limitation. 46 U.S.C. § 1710(g). But the savings provisions do not affect only "ongoing deliberations." They also exempt all actions filed within one year of the date of enactment. To this extent, the savings provisions can be said to "fix a period" within which a party may commence an action to vindicate its claims or forever lose them. The savings provisions of the Shipping Act of 1984 thus appear to share characteristics of both the jurisdictional savings provision and the traditional statute of limitation.

The Court turns for guidance to the policy considerations underlying the conflicting statutes relied upon by the parties. The legislative history of the 1984 Act, set forth at some length in Part IIA above, reveals an overriding purpose to vest exclusive jurisdiction over maritime antitrust remedies with the FMC. Avoiding parallel litigation

---

extend *jurisdictional* limitations. *See, e.g., In re Greenwald,* 48 B.R. 263, 273 (S.D.N.Y.1984) (state statute of limitation bar under Virginia law); *In re L.A. Clarke & Son, Inc.,* 59 B.R. 856, 857 (Bankr.D.D.C.1986) (no statute of limitation bar under Virginia law); *In re Jackson,* 42 B.R. 76, 84 (Bankr.D.D.C.1984) (state law usury claim not time-barred); *In re Ward,* 42 B.R. 946, 950 (Bankr.M.D.Tenn.1984) (§ 108(a) extension inapplicable to extend limitation period for enforcement of judgment lien because cause of action unrelated to debtor's claim); *Matter of Lauderdale Motorcar Corp.,* 35 B.R. 544, 549–50 (Bankr.S.D.Fla.1983) (§ 108(a) inapplicable because right to protest non-renewal of dealer agreement not an "action" within meaning of statute; dictum that debtor's failure to protest non-renewal within 90 days left state agency without jurisdiction to act); *In re Radcliffe's Warehouse Sales, Inc.,* 31 B.R. 827, 830–32 (Bankr.W.D.Wash.1983) (§ 108(a) unavailable to extend state statute of limitation in action by trustee based on creditors' rights); *In re Reliable Drywall, Inc.,* 20 B.R. 386, 387 (Bankr.D.Ariz. 1982) (§ 108(a) extends statute of limitation in action to foreclose on property encumbered by debtor's mechanic's lien).

The legislative history of section 108(a) suggests that Congress viewed the statute as establishing a limited tolling of statutes of limitation for causes of action belonging to the bankruptcy estate. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 318, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6275 ("Subsection (a) extends any statute of limitation for commencing or continuing an action by the debtor....").

7. While the parties agree that section 108(a) can, in appropriate circumstances, operate to extend a statute of limitation in favor of the estate, they dispute whether it is similarly applicable to a jurisdictional provision. Plaintiff does not offer, and the Court has not found, authority for the latter proposition. *See supra* note 6. The Court declines to create such a rule in the context of this case, involving as it does construction of a statute whose legislative history reveals a clear congressional concern with divesting federal courts of parallel jurisdiction over maritime antitrust matters.

in the courts and before the agency, with its ensuing threat of regulatory uncertainty, was of paramount concern.

The purpose of section 108(a) of the Bankruptcy Code, on the other hand, is to give the trustee or debtor sufficient time to decide whether to start a lawsuit. "The debtor is granted a grace period to determine whether his rights, which might be unknown on the Filing Date, are worth pursuing in the courts." *Matter of Lauderdale Motorcar Corp., supra,* 35 B.R. at 549. A broad reading of this provision furthers the bankruptcy goals of preserving the maximum amount of property and business opportunities for the estate. *See In re Santa Fe Development and Mortgage Corp., supra,* 16 B.R. at 168 (construing § 108(b)). Section 108(a) thus furthers the bankruptcy policy of preserving assets of the estate, including a debtor's causes of action, *see* 11 U.S.C. § 541(a)(1), which may be affected by statutes of limitation.

Upon considering the relative degrees to which these policies are implicated in the circumstances of this case, the Court is persuaded that those embodied in the savings provisions of the 1984 Shipping Act should prevail. The Court simply cannot reconcile plaintiff's claims with the clear expression of Congress's intent to divest the courts of jurisdiction over federal maritime antitrust actions filed after the one-year period specified in 46 U.S.C. § 1719(e)(2)(B).

The jurisdictional impact of the 1984 Act is evident, and it is precisely this aspect of the statute that counsels against applying Bankruptcy Code section 108(a) to the savings provision of section 1719(e)(2)(B). An express savings clause represents a limited exception to the general rule that a court must apply the law in effect at the time it renders its decision. Where Congress withdraws jurisdiction from the courts, a savings provision will be strictly construed:

> When the very purpose of Congress is to take away jurisdiction, of course it does not survive, even as to pending suits, unless expressly reserved.... If the aim is to destroy a tribunal or take away

cases from it, there is no basis for finding saving exceptions unless they are made explicit.

*De La Rama S.S. Co. v. United States,* 344 U.S. 386, 390, 73 S.Ct. 381, 383–84, 97 L.Ed. 422 (1953); *see also Hallowell v. Commons,* 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916). Because the effect of the 1984 Shipping Act appears closer to a jurisdictional repeal than it does to the repeal of a statute that simply creates rights and prescribes the manner of their vindication, *De La Rama S.S. Co.,* 344 U.S. at 390, 73 S.Ct. at 383–84, the Court is unwilling to imply by judicial fiat what Congress has not expressly provided.

Here, the savings provision sets a clear limit on the exemption from its prohibition of private antitrust suits. There is no indication that Congress intended a further extension of that exemption for bankrupt debtors. In the face of the clear statutory language and unmistakeable legislative purpose, the Court is unwilling to construe the Act in such fashion that its jurisdictional limits apply to viable shipping firms but not to bankrupt shipping firms.

The clear jurisdictional purpose underlying the Act convinces the Court that this is not an appropriate case for application of section 108(a).

### III. CONCLUSION.

The Court finds that the Shipping Act of 1984 is not per se inapplicable to this case because of the fact that plaintiff alleges conduct occurring prior to the date of enactment of the Act. The Court thus applies the Act's jurisdictional provisions barring private antitrust actions, subject only to a limited saving of those actions filed prior to enactment or based on pre-Act conduct and filed on or before March 20, 1985. Because of the jurisdictional nature of those provisions, the Court declines to apply section 108(a) to extend the filing period available to Seawinds for commencement of this antitrust action. Inasmuch as this action was not filed until May 9, 1986, more than one year beyond the savings period established in 46 U.S.C. § 1719(e)(2)(B), holds that this action must

be dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.