C.A. VENEZOLANA DE
NAVEGACION,
Plaintiff,

v.

JOSEPH VINAL CONTAINER CORPO-
RATION and Joseph Vinal Ship Main-
tenance, Inc., Defendants and Third-
Party Plaintiffs,

v.

AMERICAN TISSUE CORPORATION,
Third-Party Defendant.

No. 86 Civ. 8339 (RWS).

United States District Court,
S.D. New York.

Sept. 4, 1987.

Olwine, Connelly, Chase, O'Donnell &
Weyher, New York City (Renato C. Giallo-
renzi, of counsel), for plaintiff.

Hill, Betts & Nash, New York City (Ken-
neth Geller, of counsel), for defendants and
third-party plaintiffs.

Bobrow, Greenapple & Skolnik, New
York City (Steven D. Skolnik, of counsel),
for third-party defendant.

OPINION

SWEET, District Judge.

The parties have moved the court as fol-
lows: (1) Defendant and Third-Party Plain-
tiff Joseph Vinal Ship Maintenance, Inc.
("Vinal") has moved for an order pursuant
to Rule 3(j) of the Rules of the United
States District Courts for the Southern and
Eastern Districts of New York ("Local
Rules") vacating the court's decision of
February 19, 1987 and for reargument of
the issues decided therein; (2) Plaintiff
C.A. Venezolana de Navegacion ("Ven-
Line") has moved for an order pursuant to
Fed.R.Civ.P. 56 and 54(b) for summary
judgment and for entry of final judgment
granting the amount sought in the plead-

ings for unpaid charges for container equipment leased to Vinal; (3) VenLine has also moved for summary judgment under Rule 56 dismissing the counterclaims asserted against it by Third-Party Defendant American Tissue Corporation ("American") and for an order pursuant to Fed.R.Civ.P. 12(f) striking American's fourth and fifth affirmative defenses on the ground that they are insufficient as a matter of law;[1] and (4) American has moved for an order pursuant to Fed.R.Civ.P. 15(a) granting leave to amend its Answer to Third Party Complaint and its Claims and Defenses Against Plaintiff and Answer to Complaint under Fed.R.Civ.P. 14(c).

Upon the following facts and conclusions and those set forth in the February 19, 1987 opinion which are incorporated here:

(a) Vinal's motion to vacate the court's decision of February 19, 1987 is denied;

(b) VenLine's motion for summary judgment against Vinal is denied;

(c) VenLine's motion for summary judgment dismissing American's counterclaims is denied in part and granted in part;

(d) VenLine's motion to strike American's fourth affirmative defense is granted; and

(e) subject to all of the foregoing, American's motion to amend its pleadings is granted.

### Vinal's Motion for Reargument

■ In support of its motion for reargument, Vinal asserts that statements made by American in its responsive pleadings as third-party defendant raise factual and legal issues that require the court to vacate its decision of February 19, 1987. Vinal argues that alleged discussions by each of Vinal and VenLine with American concerning which of the three would be liable for the equipment charges had the legal effect of "modifying" the Equipment Interchange Agreement dated September 17, 1985 between VenLine and Vinal ("Leasing Agreement"). Whatever the court ultimately will find to be the legal effect of these alleged discussions, it will not be, in the first instance, to relieve Vinal of its contractual obligation to pay VenLine specified daily charges for the use of the latter's container. Because Vinal has failed to adduce any evidence that VenLine agreed in writing to a modification or discharge of Vinal's obligations under Clause 4, Appendix A to the Leasing Agreement, the conclusions of fact and law set forth in the court's February 19, 1987 opinion describing the tripartite relation between the shipping line (VenLine), the freight forwarder (Vinal), and the shipper (American) remain undisturbed.

### VenLine's Motion for Summary Judgment Against Vinal

In order to grant summary judgment, the court must find that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c). In other words, the court must inquire whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The standard is the same as that for a directed verdict:

whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Id.* 106 S.Ct. at 2512. Summary judgment allows a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986).

In support of its motion for summary judgment on damages, VenLine has submitted six invoices for 1986 dated June 16, July 24, September 16, October 7, October 14, and November 5, respectively, and a March 9, 1987 invoice which allegedly add

---

1. VenLine had previously filed a motion for an order pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss American's counterclaims for failure to state a claim upon which relief can be granted. The court's ruling on VenLine's motion for summary judgment encompasses VenLine's earlier motion, which raised essentially the same issues. The court notes further that American has withdrawn its fifth affirmative defense.

up to a total of $256,830.[2] VenLine has also submitted a worksheet that allegedly sets forth the billing data that VenLine used to compile the invoices. This worksheet bears the signature, dated March 9, 1987, of Joseph Perez, president of Vinal. VenLine offers this signed worksheet as proof of Mr. Perez' acknowledgment of the amounts owing to VenLine.

■ Vinal has opposed VenLine's motion for summary judgment solely on the grounds that VenLine's request was premature in light of Vinal's pending motion for reargument. Vinal's reliance on its unsuccessful motion is misplaced. That it was able to come up with some grounds, however slender, on which to base its motion for reargument did not give Vinal leave to ignore the court's recommendation that the parties attempt to agree on the charges due. Were it not for the submissions of third-party defendant American, the court would be inclined to grant VenLine's motion in the amount of charges requested. However, American's submissions on this motion reveal that there are too many unexplained discrepancies in VenLine's invoices for the court to rely on them as a measure of damages. Contrary to the assertion of VenLine, the record is not "devoid of any reference to improper billings [and] inaccurate calculations."

First, the affidavit of Joseph Sedaghat, traffic manager of American, directs the court's attention to duplicate charges for the same container during the same period of time in the invoices for equipment charges that Vinal sent to American. Although the VenLine-Vinal invoices differ in some respects from the Vinal-American invoices[3], they overlap often enough for the same duplicate charges to appear on both invoices. For example, in both the VenLine-Vinal invoice dated September 16, 1986 and the Vinal-American invoice dated September 17, 1986, container # SCXU457001 is billed twice at $108.00 for the period from July 18, 1986 to July 31, 1986. The court leaves it to the parties to attempt to resolve these apparent billing errors and any others like it that the court has not yet discovered.[4]

Enough billing discrepancies have been pointed out to create an issue of material fact and, accordingly, VenLine's motion for summary judgment and entry of final judgment against Vinal is denied.

**VenLine's Motion for Summary Judgment against American**

1. *American's First Counterclaim*

American's first counterclaim seeks indemnification from VenLine in the event that American is deemed liable to Vinal for the equipment charges in dispute. In support of its counterclaim American alleges that it and VenLine entered into an oral agreement in late 1985 or early 1986 pursuant to which American agreed to continue to do business with VenLine and to utilize the services of Vinal in consideration for VenLine's promise not to charge American equipment fees. American also alleges that at approximately the same time it entered into an oral agreement with Vinal pursuant to which it agreed to pay $.50 per day per container in storage fees to Vinal without any further equipment charges. In the interest of completeness, it should

---

**2.** Although the xeroxed copies of the invoices submitted to the court are somewhat blurred, the court has calculated the 1986 invoices for a total of $191,652, not $227,958 as VenLine asserts in its motion.

**3.** For example, in the VenLine-Vinal invoice dated June 19, 1986, there is an equipment charge of $132.00 for the lease of container # TRIU400230 and chassis # ISIZ41820 from 04/08/86 to 04/21/86 at a rate of $12.00 per day. The charge for the use of the same equipment for the same period of time is reported on the Vinal-American invoice to be $198.00, calculated at a rate of $18.00 per day. Although the latter invoice seems to accord with the Leasing

Agreement's stated per day charge for containers and chassis together, none of the parties has attempted to clarify this discrepancy and many others like it.

**4.** As a start, however, the court draws Vinal's attention to page 1 of the October 7, 1986 invoice it received from VenLine. There appears a charge for $558.00 for container # SCXU457001 and chassis # GALC945066 for the period August 1 through August 31, 1986. Three rows down there appears a charge for $372.00 for the same container without chassis for the same period.

also be noted that Vinal's third-party complaint against American alleged an agreement between itself and American pursuant to which the latter agreed to pay equipment charges for containers holding American's goods at the same per diem rates as those set forth in the Leasing Agreement. American's answer denied such an agreement.

None of the parties has disputed that (1) beginning in July 1986, VenLine began invoicing Vinal directly for equipment charges under the terms of the Leasing Agreement and (2) shortly thereafter, Vinal relayed substantially the same invoices to American requesting payment.

■ In support of its motion for summary judgment dismissing American's counterclaims, VenLine has submitted a statement pursuant to Local Rule 3(g) and the affidavit of Leonardo Brea, one of its managers. Although VenLine's Local Rule 3(g) statement focuses primarily on facts pertaining to its dispute with Vinal, item 5 states that "there is no agreement between American and VenLine which provides that VenLine will pay for the equipment per diem charges." The Brea affidavit reiterates this sentiment with varying degrees of emphasis in items 6, 9 and 11.

In opposition to VenLine's motion for summary judgment, American has submitted, *inter alia,* affidavits from Nader Damaghi, a vice president of American. The Damaghi affidavits directly contravene the assertions in the Brea affidavit by alleging that VenLine and American "agreed that if American continued to do business with VenLine and utilized the services of Vinal, future demurrage and equipment charges would also be avoided." Thus, both parties have submitted contradictory evidence by way of affidavits concerning a material issue of fact: namely, the nature of the alleged agreement between VenLine and American. The court clearly must resolve this factual issue before addressing the legal issue as to whether this alleged agreement can be construed

as grounds for a claim of indemnification. Accordingly, VenLine's motion to dismiss American's first counterclaim is denied.[5]

### 2. *American's Second Counterclaim*

Upon a fair reading of American's answer, it appears that its second counterclaim requests a declaratory judgment that (1) the Leasing Agreement is a prohibited act under section 10 of the Shipping Act of 1984 ("Act"), 46 U.S.C. § 1709(d), and (2) the Leasing Agreement and any "charges alleged or assessed against American in connection therewith" are void with respect to American. VenLine has opposed the first prong of the second counterclaim on the grounds that the Leasing Agreement is not covered by the Act. It does not appear from the papers submitted to the court that VenLine has moved with respect to the second prong of American's second counterclaim.

■ As for the first prong, American has failed to draw the court's attention to any specific provision in the Act, its legislative history, *see* 1984 *U.S. Code Cong. and Adm.News* p. 167, or the regulations promulgated under the Act, *see* 46 C.F.R. §§ 572.101–575.991, that indicates Congress' intent to prohibit agreements between an ocean common carrier like VenLine and a freight forwarder like Vinal to fix a schedule of equipment charges that are unrelated to the carrier's shipping tariffs. The section of the Act to which American has referred, 46 U.S.C. § 1709(d), simply requires common carriers and freight forwarders to observe just and reasonable regulations and practices "relating to or connected with receiving, handling, storing, or delivering property." Section 1709(d) does not, however, proscribe agreements that establish charges for containers that remain in the freight forwarder's possession beyond a certain number of days. Accordingly, VenLine's motion to dismiss

---

**5.** In its memorandum of law in opposition to VenLine's motion for summary judgment, American has requested reasonable attorney's fees in opposing the motion pursuant to Fed.R. Civ.P. 11. That request is denied.

the first prong of American's second counterclaim is granted.[6]

The second prong of American's second counterclaim reveals the heart of American's concern: namely, that the Leasing Agreement may somehow become binding upon it. The Leasing Agreement was entered into by and between VenLine and Vinal and established a contractual obligation on the part of Vinal to pay per diem charges for the use of VenLine's equipment beyond a specified number of grace days during which no charge would be levied. Clause 4 of Appendix A refers to a "shipper" or "consignee" apparently to clarify that Vinal remains liable to VenLine for equipment charges that are caused by the acts of a shipper or consignee. On the other hand, as mentioned above, Vinal has alleged that it had agreed with American that the latter would be responsible for the same schedule of equipment charges that Vinal was subject to under the Leasing Agreement. However, it is not necessary at this time to address American's liability for equipment charges under this alleged agreement with Vinal, for which no offer of proof has been made.

**American's Motion to Amend its Pleadings**

American has moved to amend its Answer to Third-Party Complaint and to amend its Claims and Defenses against Plaintiff and Answer to Complaint. To grant a motion for leave to amend, "the court need not finally determine the merits of a proposed claim or defense, but merely satisfy itself that it is colorable and not frivolous." *Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y.1986). The proposed amendments set forth additional counterclaims for fraud and negligence against VenLine and make certain other technical and conforming corrections. Be-

cause the amendments are not frivolous and will not cause VenLine undue prejudice, they will be allowed, subject to the court's rulings above dismissing what is now American's fourth counterclaim.[7]

IT IS SO ORDERED.

---

**6.** For the same reasons, the court grants VenLine's motion to strike American's fourth affirmative defense.

**7.** In response to certain statements made by American on pages 12 and 13 of its Memorandum of Law in Opposition to Motion for Summary Judgment against American Tissue Corporation that, if proved, its freshly asserted fraud and negligence claims would establish "an un-

just and unreasonable practice relating to or connected with the storage of property" under section 10 of the Shipping Act of 1984, "behavior such as fraud and negligence does not come within the ambit of the Act." *Johnson Products Co., Inc. v. M/V La Molinera,* 619 F.Supp. 764, 766 (S.D.N.Y.1985) (discussing legislative history of section 10 of the Act).