23142

Gaines W. HAMMOND, Jr., Respondent v. BUTLER, MEANS, EVINS & BROWN, Thomas A. Evins, Stanley T. Case and Alan S. Kramer, Defendants, of whom Alan S. Kramer is Appellant.
Appeal of Alan S. KRAMER.

(388 S. E. (2d) 796)

Supreme Court

*J. D. Todd, Jr.* and *O. Doyle Martin* both of *Leatherwood, Walker, Todd & Mann,* Greenville, *for appellant.*

*A. Camden Lewis* and *Mary G. Lewis* both of *Lewis, Babcock, Pleicones & Hawkins,* Columbia, *for respondent.*

Heard Feb. 21, 1989.

Decided Jan. 22, 1990.

FINNEY, Justice:

This appeal involves the question of whether a South Carolina court may exercise personal jurisdiction over a nonresident, appellant Alan S. Kramer (Kramer), who resides and practices law in New York City. Kramer moved to dismiss the action against him for lack of personal jurisdiction. The trial court held that the long-arm statute and minimum contact requirements had been satisfied; therefore, South Carolina could exercise personal jurisdiction. We affirm the trial court's decision.

Respondent Gaines W. Hammond, Jr. (Hammond), is a businessman-urologist who practices in South Carolina. Until late 1984, he was represented in the business transaction which led to this lawsuit by defendants Stanley T. Case (Case) and Thomas A. Evins (Evins), partners in the South Carolina law firm of Butler, Means, Evins & Brown (Butler Firm). Kramer represented three Californians (California Group) who invented a non-surgical medical technology for treatment of kidney stones.

In July 1984, Hammond talked with one of the inventors about acquisition of rights to this new technology. In August 1984, Hammond decided to try to obtain a license from the California Group, and a meeting was held in California. At this meeting, Kramer represented the California Group, and Hammond was represented by Evins and Case.

Subsequently Hammond paid the California Group $50,000 for an option to acquire the right to license the technology for $1,000,000. The option was due to expire October 22, 1984, but could be extended until November 8, 1984, for an additional $25,000. The designated licensee was a newly-formed Delaware corporation, Hammond Technologies, Inc. (HTI).

Hammond was not successful in finding a purchaser for a prototype of the machine by the end of the first option period, so he paid the additional fee to extend the option. Michael Reese Hospital in Chicago, the principal prospect, agreed to the purchase on certain conditions, one of which was a letter of credit for $400,000.

Hammond entered into a contract with Dr. Gerald Wallace of Mobile, Alabama, to secure the letter of credit. Wallace specified prerequisites to providing the letter of credit, and the California Group required modifications of the Hammond-Wallace contract. The transactions among the parties were not finalized by November 8, 1984, and the option expired.

By November 14, 1984, HTI had undergone organizational changes which included a name-change to Medstone International, Inc. (Medstone), and amendment of the subscription agreement that was executed by all parties. Thereafter the California Group granted the license to Medstone, which completed the transaction with Michael Reese Hospital. The stock ownership of Medstone always has been the principal issue in this controversy. Initially, terms concerning stock ownership were reflected in a subscription agreement dated in September 1984 which allocated 70,000 out of 100,000 shares of the company to Hammond. Hammond alleges that as a result of modification of the subscription, he was allocated only 10,000 shares. Kramer became president of the company, and Hammond became one of the vice presidents. They worked together as officers and directors until July 1985, when Hammond ceased active participation in Medstone.

Hammond filed suit against the Butler Firm, Kramer, Evins and Case in March of 1986. Hammond's complaint alleged conspiracy, fraud and deceit, breach of fiduciary duty, negligence, slander, and violation of the South Carolina Unfair Trade Practices Act.

Hammond claims that from August through November 14, 1984, Kramer and Evins conspired to prevent him from obtaining a controlling share of Hammond Technologies, Inc. (now Medstone International, Inc.). Further, Hammond alleges that Kramer and the Butler firm conspired to defraud him of Medstone stock through delay and misrepre-

sentation, resulting in the drastic reduction of Hammond's shares while Kramer's shares increased in number.

On the basis that he had absolutely no contact with or activities in South Carolina, Kramer moved to dismiss the complaint against him for lack of personal jurisdiction. The trial court denied the motion. Kramer appeals.

Notwithstanding the fact that at trial the burden of establishing jurisdiction is upon the party seeking to invoke the jurisdiction of the courts of this state against a nonresident by utilization of our long-arm statute, *Yarborough and Company v. Schoolfield Furniture Industries, Inc.*, 275 S. C. 151, 268 S. E. (2d) 42 (1980), at the pretrial stage of the proceedings, the plaintiff need only make a prima facie showing by pleadings and affidavits. *Askins v. Firedoor Corporation of Florida*, 281 S. C. 611, 316 S. E. (2d) 713 (Ct. App. 1984); *Bryson v. Northlake Hilton*, 407 F. Supp. 73 (M. D. N. C. 1976).

There is a two-step approach to determining whether our courts may exercise personal jurisdiction over a nonresident. The first step is whether the nonresident's conduct meets the requirements of South Carolina's long-arm statute; and second whether, under the particular circumstances, a finding of minimum contacts comports with "traditional notions of fair play and substantial justice." *Hume v. Durwood Medical Clinic, Inc.*, 282 S. C. 236, 318 S. E. (2d) 119, *cert. granted*, 284 S. C. 417, 327 S. E. (2d) 322, *cert. dismissed*, 285 S. C. 377, 329 S. E. (2d) 443 (1984), (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

South Carolina's long-arm statute, S. C. Code Ann. Section 36-2-803 (1976), reads in pertinent part:

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in this State;

\* \* \* \* \*

(c) commission of a tortious act in whole or in part in this State;

\* \* \* \* \*

In certain instances, an out-of-state defendant may ■■ be subject to jurisdiction under a long-arm statute on the theory that his co-conspirator conducted activities in a particular state pursuant to the conspiracy. *Ghazoul v. International Management Services, Inc.*, 398 F. Supp. 307 (S. D. N. Y. 1975). A civil conspiracy consists of three elements: (1) A combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damages.

The respondent alleges that Kramer, the Butler Firm, ■ Evins and Case conspired to defraud him, that the plan was carried out by delay and misrepresentation, and that as a result of this alleged conspiracy, he has been injured.

We find that the allegations contained in Hammond's pleadings and affidavits are sufficient to invoke the long-arm statute under the provisions of § 36-2-803(1)(c).

The second step in determining jurisdiction is wheth- ■ er a nonresident defendant has established minimum contacts which meet the due process requirement. *International Shoe Co. v. State of Washington, supra.* This test requires that the state's exercise of jurisdiction not offend traditional notions of fair play and substantial justice, and is based on four considerations.:

1. The duration of the activity of the non-resident within the state;
2. The character and circumstances of the commission of the non-resident's act;
3. The inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and
4. The state's interest in exercising jurisdiction.

*Colite Industries v. G. W. Murphy Const.*, 297 S. C. 426, 377 S. E. (2d) 321 (1989).

The record in this case shows that the transaction in which Kramer participated involving South Carolina parties lasted for several months. The pleadings allege that Hammond was the object of the tortious conduct which resulted in a financial benefit for Kramer, to Hammond's detriment. Finally, we conclude that conferring jurisdiction upon this

state would pose no unusual inconvenience since all parties to the suit except Kramer are South Carolina residents.

■ Moreover, jurisdiction may not be avoided merely because the defendants did not physically enter South Carolina. The constitutional touchstone remains whether the defendant purposely established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 105 S. Ct. 2174, 2184, 85 L. Ed. (2d) 528 (1985). This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitious," or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 104 S. Ct. 1473, 79 L. Ed. (2d) 790 (1984).

There is evidence in the record indicating that Kramer participated extensively from the initial meeting between Hammond and the California Group. Kramer met with investors, negotiated with Evins and Case, and eventually became a principal officer and stockholder in Medstone. Hammond was a major investor and would have been a necessary party to ongoing business transactions involving Kramer. Further, we note from the record that the corporate by-laws of HTI state that Spartanburg, South Carolina, was to be the principal place of business and also that Spartanburg was listed on the corporate stationery.

Finally, this record contains written correspondence and evidence of telecommunications which, with other evidence, is sufficient to overcome a motion to dismiss under Rule 12(b)(2). *See Kimball v. Schwartz*, 580 F. Supp. 582 (W. D. Pa. 1984); *Sterling Indus. Corp. v. Telephone, Inc.*, 484 F. Supp. 1294 (D. C. Mich. 1980).[1]

We affirm the decision of the trial court denying appellant's 12(b)(2) motion challenging jurisdiction of the South Carolina courts.

Affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and TOAL, JJ., concur.

---

[1] Our conclusion in this case is consistent with the Court of Appeals' decision in *Allen v. Columbia Financial Management Ltd.*, 297 S. C. 481, 377 S. E. (2d) 352 (Ct. App. 1988).