**UNITED STATES of America Plaintiff,**

v.

**M/V SANTA CLARA I, its engines, boilers, machinery, masts, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, capstans, outfit, tools, pumps, pumping and other equipment, etc.,** *in rem,*

**and**

**Kyriakopoulos Internacional, S.A. and Empresa Naviera Santa, S.A., and Juan Alvarez,** *in personam,* **Defendants,**

**KYRIAKOPOULOS INTERNACIONAL, S.A. and Empresa Naviera Santa, Third–Party Plaintiffs,**

v.

**COMPANIA MINERA EL INDIO; Lac Minerals; Chemical Specialties, Inc., Degesch De Chile, Ltda.; and Degesch America, Inc. Third–Party Defendants,**

**DEGESCH DE CHILE, LTDA. Third–Party Plaintiff,**

v.

**A. HARDRODT CHILE, S.A., Third–Party Defendant.**

Civ. A. No. 2:92–0389–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 5, 1994.

Ben A. Hagood, Jr., U.S. Attys. Office, Charleston, SC, Eileen T. McDonough, Environmental Defense Section Environmental & Natural Resources Div., Washington, DC, Michael J. Devine, Arthur J. Volkle, Jr., Richard T. Buckingham, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for plaintiffs.

Gordon D. Schreck, Charleston, SC, Brian D. Starer, New York City, Douglas Manning Muller, Charleston, SC, Charles B. Anderson, New York City, for defendants.

## ORDER

NORTON, District Judge.

### I. BACKGROUND

The action with which this order is concerned is a fourth-party action for indemnity, both contractual and equitable, brought by Degesch De Chile, Ltda., (hereinafter "Degesch Chile") against A. Hardrodt Chile, S.A., (hereinafter "Hardrodt") in which Degesch Chile is seeking to recover all damages recovered against it by Defendants and Third–Party Plaintiffs, Kyriakopoulos Internacional, S.A., (hereinafter "Kyriakopoulos") and Empresa Naviera Santa, S.A., (hereinafter "Empresa"), or Third–Party Defendant, Degesch America, Inc., (hereinafter "Degesch America").[1]

The main action was commenced by Plaintiff, United States of America, against Defendants, Kyriakopoulos, Empresa, Juan Alvarez and the M/V Santa Clara I, seeking recovery of civil penalties and damages for the release of hazardous substances into the environment. Kyriakopoulos and Empresa have in turn brought a third-party action against Third–Party Defendants, Compania Minera El Indio (hereinafter "Minera"), LAC Minerals (hereinafter "LAC"), Chemical Specialties, Inc., (hereinafter "Chemical"), Degesch Chile and Degesch America, seeking indemnification.

This matter is now before the court on Hardrodt's Motion to Dismiss Degesch Chile's Complaint against it pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdic-

---

1. Degesch Chile and Hardrodt are incorrectly listed as Third–Party Plaintiff and Third–Party Defendant, respectively. Degesch Chile is, in fact, the Fourth–Party Plaintiff and Hardrodt is the Fourth–Party Defendant.

tion. A hearing was held on this matter on June 15, 1994.

## II. FACTS

Hardrodt is a Chilean corporation principally engaged in the business of freight forwarding.[2] On November 25, 1991, Degesch Chile retained Hardrodt to process the transport of 1,800 net kilograms of magnesium phosphide to Baltimore, Maryland. In connection therewith, Degesch Chile supplied Hardrodt with several documents needed to process the transport of the magnesium phosphide.

Hardrodt forwarded the documents to the local Chilean customs agent, Mr. Aquiles Rodriguez, who prepared and drew up the bill of lading. Mr. Rodriguez sent the bill of lading to the local Chilean carrier's ship agent, Empresa, who stamped, dated, numbered, signed and inserted the freight value onto the same. Empresa then forwarded the bill of lading to Degesch Chile against payment of the freight.[3]

The magnesium phosphide was shipped to Baltimore, Maryland, from Valparaiso, Chile, aboard the M/V Santa Clara I. The magnesium phosphide was stored in ten metal drums which were stored break bulk in the M/V Santa Clara I's number one upper tween deck.

On January 4, 1992, the M/V Santa Clara I encountered heavy weather off the coast of New Jersey while proceeding southbound from Elizabeth City, New Jersey, to Baltimore, Maryland. As a consequence, the M/V Santa Clara I lost containers and other cargo into the sea. She also suffered stowage collapse of sundry cargo within her holds, including some of the drums of magnesium phosphide.

Subsequently, on January 4th and 5th, 1992, the drums of magnesium phosphide were off-loaded in Baltimore, Maryland. However, as a result of the damage some of the drums had suffered, approximately 800 pounds of magnesium phosphide had spilled into the hold of the M/V Santa Clara I. On January 8, 1992, while the M/V Santa Clara I was berthed in Charleston, South Carolina, the 800 pounds of loose magnesium phosphide were discovered and identified. The United States then had the magnesium phosphide removed from the M/V Santa Clara I's hold.

The United States brought this action against the M/V Santa Clara I and her owners and charterers seeking to recover, among other things, the cost of the clean up.[4] Kyriakopoulos and Empresa, in turn, brought a third party action against Minera, LAC, Chemical, Degesch Chile and Degesch America for indemnity, alleging they were responsible for the release of the arsenic and magnesium phosphide.[5] Degesch Chile brought this action against Hardrodt seeking indemnification, alleging in substance that Hardrodt failed to properly note on the bill of lading that magnesium phosphide is a hazardous substance and that had it done so the magnesium phosphide would have been stored in a different manner and in a different location on the M/V Santa Clara I which would have prevented damage to the drums.

## III. ANALYSIS

### A. PERSONAL JURISDICTION

 The determination of whether a court may exercise personal jurisdiction over

---

**2.** Prior to April 30, 1990, Hardrodt was registered with the Chilean government under the name of A. Hardrodt Transportes, Ltda. On April 30, 1990, Hardrodt officially changed its name to A. Hardrodt Chile, S.A. For purposes of this order, "Hardrodt" shall refer to both A. Hardrodt Chile, S.A., and A. Hardrodt Transportes, Ltda.

**3.** Hardrodt did not see the bill of lading prior to its delivery to Empresa nor was it ever sent the original bill of lading, but rather received a copy. The original was sent to Degesch Chile.

**4.** The M/V Santa Clara I also lost a number of containers of arsenic overboard during the storm and several containers of arsenic were damaged or destroyed. The United States is also seeking to recover the cost of retrieving the lost containers of arsenic and the cost of cleaning up the arsenic released into the M/V Santa Clara I's hold. The fourth party action does not include the cost of retrieving and cleaning up the arsenic since Hardrodt was not involved with the arsenic shipment.

**5.** Degesch America has cross-claimed against Degesch Chile.

a non-resident defendant involves a two-step analysis.[6] *Fed. Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 (4th Cir.1989); *White,* 300 S.C. 241, 387 S.E.2d 260, 262. First, the court must decide if it has the power to exercise personal jurisdiction by determining whether the defendant's conduct falls within the parameters of the South Carolina Long Arm Statute. *Lake Shore,* 886 F.2d at 657 n. 2.[7] Second, the court must determine whether the exercise of personal jurisdiction comports with federal due process standards. *Id.* Since Hardrodt's conduct does not fall within the ambit of the South Carolina Long Arm Statute, and since the exercise of personal jurisdiction over it would offend federal due process, Degesch Chile's Complaint against Hardrodt must be dismissed.

### 1. South Carolina Long Arm Statute

The South Carolina Long Arm Statute[8] authorizes the exercise of personal jurisdiction over a non-resident defendant,

(1) ... who acts directly or by an agent as to a cause of action arising from the person's

 (a) transacting any business in this State;

 (b) contracting to supply services or things in the State;

 (c) commission of a tortious act in whole or in part in this State;

 (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives sub-

stantial revenue from goods used or consumed or services rendered, in this State; or

 (e) having an interest in, using, or possessing real property in this State; or

 (f) contracting to insure any person, property or risk located within this State at the time of contracting; or

 (g) entry into a contract to be performed in whole or in part by either party in this State; or

 (h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him. . . .

*Id.* at § 36–2–803.

■ A court may exercise personal jurisdiction over a non-resident defendant " *'only in suits growing out of acts which have created contacts with ...* [South Carolina], however, limited or transient such contacts may be.' " *Jenrette v. Seaboard Coast Line R.R. Co.,* 308 F.Supp. 642, 644 (D.S.C.1969) (citation omitted) (emphasis in original). Unless the non-resident defendant's conduct out of which the suit arises falls within one of the Long Arm Statute's enumerated categories, the court is without authority to exercise personal jurisdiction. *White,* 387 S.E.2d at 262–63.[9]

---

**6.** Degesch Chile has the burden of establishing that the court may exercise personal jurisdiction over Hardrodt. *See Umbro U.S.A., A Div. of Stone Mfg. Co. v. Goner,* 825 F.Supp. 738, 739 (D.S.C.1993) (citing *White v. Stephens,* 300 S.C. 241, 387 S.E.2d 260, 262 (1990); *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989)). "To meet this burden, ... [Degesch Chile] must make a prima facie showing of jurisdiction by the pleadings and affidavits." *Id.* at 739–40 (citing *Hammond v. Butler, Means, Evins & Brown,* 300 S.C. 458, 388 S.E.2d 796, 798, *cert. denied sub nom., Kramer v. Hammond,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990)).

**7.** *But see infra* p. 8 and note 9 (Due to recent case law, this court modifies some of the language in footnote 2 of *Lake Shore,* as explained in footnote 9 of this order.).

**8.** S.C. Code Ann. §§ 36–2–801 to 809 (Law. Co-op. 1976 as amended).

**9.** Up until the mid–1980's, the South Carolina Supreme Court, consistent with *Triplett v. R.M. Wade & Co.,* 261 S.C. 419, 200 S.E.2d 375 (1973) which extended South Carolina's Long Arm Statute "to the furthest limits permissible" under the due process clause, frequently failed to analyze whether the statute applied in any particular case. Rather, the court merely cited *Triplett* and moved on to the due process analysis. *See, e.g., Atlantic Soft Drink Co. of Columbia, Inc. v. South Carolina Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876, 878 (1985); *accord Lake Shore,* 886 F.2d 654, 657 n. 2. More recently, however, the South Carolina Supreme Court has been analyzing the Long Arm Statute. *See, e.g., Hammond,*

■ None of Hardrodt's activities complained of in Degesch Chile's Complaint gives rise to personal jurisdiction under the South Carolina Long Arm Statute. Hence, Degesch Chile's Complaint against Hardrodt must be dismissed.

Hardrodt's conduct does not fall within sections 36–2–803(e), (f) or (h), as its alleged actions do not relate to an interest in, use of or possession of real property, do not relate to an insurance contract and do not relate to the production, manufacture or distribution of goods.[10]

Hardrodt has not transacted any business in South Carolina during the past ten years and has no record of ever having done so. Therefore, section 36–2–803(a) is, likewise, inapplicable.

Though Hardrodt did contract with Degesch Chile to process the transport of the magnesium phosphide, its actions are also outside of sections 36–2–803(b) and (g). All of the services Hardrodt agreed to provide Degesch Chile were to be performed and actually were performed entirely within Chile. In fact, Hardrodt had performed all acts it had agreed to perform prior to the time the magnesium phosphide left Chile. Moreover, the contract between Hardrodt and Degesch Chile contemplated that the magnesium phosphide would be shipped from Chile to Maryland. Neither contemplated that any of the magnesium phosphide would end up in South Carolina. Accordingly, having failed to show, or even allege, that Hardrodt contracted to supply services or things within South Carolina or that Hardrodt entered into a contract to be performed in whole or in part by either it or Degesch Chile in South Carolina, the court lacks the power to exert personal jurisdiction over Hardrodt under sections 36–2–803(b) and (g). *See, e.g., Umbro U.S.A.,* 825 F.Supp. 738; *White,* 387 S.E.2d at 262–63.

388 S.E.2d 796, 798; *Colite Indus., Inc. v. G.W. Murphy Constr. Co.,* 297 S.C. 426, 377 S.E.2d 321, 322 (1989). In two recent cases, it even found the statute inapplicable. *See Aviation Ass. & Consultants, Inc. v. Jet Time, Inc.,* 303 S.C. 502, 402 S.E.2d 177 (1991); *White,* 387 S.E.2d at 262–63.

Section 36–2–803(d) also fails to confer personal jurisdiction over Hardrodt. Hardrodt has not solicited any business in South Carolina over the past ten years, has not engaged in any other persistent course of conduct in South Carolina over the past ten years, has not derived a substantial revenue from goods used or consumed or services rendered in South Carolina during the past ten years; nor does Hardrodt have any record of ever having done any of these things in South Carolina at any time. Further, Degesch Chile has not alleged that any actions of Hardrodt caused tortious injury or death in South Carolina. If Hardrodt caused injury to Degesch Chile, Kyriakopoulos or Empresa through its alleged actions, the injury occurred elsewhere; the injury was merely discovered in South Carolina. Thus, the court may not rely on this section as a basis for exercising personal jurisdiction over Hardrodt. *See Jenrette,* 308 F.Supp. at 643–45.

Similarly, Hardrodt has committed no tortious act in whole or in part in South Carolina. If Hardrodt did commit a tort, that tort was committed in Chile. Further, none of the consequences of Hardrodt's alleged actions caused damage to Degesch Chile, Kyriakopoulos or Empresa in South Carolina. If Hardrodt's alleged actions did cause damage to any of them, that damaged occurred elsewhere; the damage was merely discovered in South Carolina. Hence, the court may not rely on section 36–2–803(c) to support personal jurisdiction over Hardrodt. *See Nelepovitz v. Boatwright,* 442 F.Supp. 1336 (D.S.C.1977).

Degesch Chile "argues that Section 36–2–803(d) [Code of Laws of South Carolina, 1976] is applicable in that defendants have threatened to include damages paid to settle claims by longshoremen in Charleston." The inaccuracy of this position is self-evident. The mere fact that Defendants have "threatened" to include injuries to longshoremen in

10. Hardrodt has never had an interest in, used or possessed real property in South Carolina, has never contracted to insure any person, property or risk located in South Carolina, or anywhere else, and has never produced, manufactured or distributed goods.

this action as an element of damage is not sufficient to enable the court to consider it when determining whether it has the power to exercise personal jurisdiction under the South Carolina Long Arm Statute. The court is obviously constrained to the causes of action alleged and the elements of damage sought, not those elements of damages which could be sought but have, for whatever reasons, not been sought. A court can only decide issues which are before it.

Since none of Hardrodt's alleged actions are within any of the grounds for exercising personal jurisdiction listed in section 36–2–803, the court lacks personal jurisdiction over Hardrodt under the South Carolina Long Arm Statute. Thus, Degesch Chile's Complaint against Hardrodt must be dismissed. *See Lake Shore*, 886 F.2d 654; *Jenrette*, 308 F.Supp. 642; *White*, 387 S.E.2d 260.

### 2. Due Process Standards

Since its ratification, it has been recognized that the due process clause of U.S. CONST. amend. XIV, § 1, imposes limitations on a state's authority to exercise personal jurisdiction over a non-resident defendant. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878). Originally, the United States Supreme Court adopted a territorial theory of personal jurisdiction. *Id.* However, as corporations became more common devices for commercial and industrial undertakings, technology, transportation and communication rapidly advanced, and people, goods and services flowed across state lines at an ever increasing rate, it became ever more evident that the territorial theory of jurisdiction was out of step with modern American society. R. LEFLAR, L. McDOUGAL & R. FELIX, AMERICAN CONFLICTS LAW § 20 (4th ed. 1986).

In 1945 the United States Supreme Court abandoned its territorial theory of personal jurisdiction in favor of a new "fairness" approach. *International Shoe Co. v. State of Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the fairness standard, a court can constitutionally exercise personal jurisdiction over a non-resident defendant if: (1) the defendant has

"certain minimum contacts with ... [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Id.* at 316, 66 S.Ct. at 158 (citation omitted), or (2) the defendant's continuous operations within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318, 66 S.Ct. at 159. These two grounds for personal jurisdiction have become known as "specific jurisdiction" and "general jurisdiction," respectively.[11] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

When specific jurisdiction is a court's basis for exercising personal jurisdiction over a non-resident defendant, the plaintiff's cause of action must have arisen out of or be connected with the defendant's activities within the forum state. *International Shoe*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. This is because the rationale for allowing a state to exercise personal jurisdiction over a non-resident defendant for causes of action arising out of the defendant's contacts with that state is that the defendant "enjoys the benefits and protection of the laws of that state" as to those activities. *Id.*

Application of the minimum contacts standard entails a two-step inquiry. *Id.* First, the court must examine the facts of the case to determine whether the defendant's contacts which give rise to the cause of action are sufficient to justify exercising personal jurisdiction over the defendant. *Id.* Second, the court must determine whether exercising personal jurisdiction over the defendant will "offend 'traditional notions of fair play and substantial justice.'" *Id.* at 317–19, 66 S.Ct. at 159 (citation omitted). Unless the defendant has sufficient contacts with the forum state and exercising personal jurisdiction will not "offend 'traditional notions of fair play and substantial justice,'" the court may not exercise specific jurisdiction over the defendant. *Id.*

In applying the first prong of the analysis, the court must focus on the contacts

11. Degesch Chile concedes that this court lacks general jurisdiction over Hardrodt.

generated by the defendant, not the unilateral acts of some other person or entity. *Umbro U.S.A.*, 825 F.Supp. at 741. The due process clause of U.S. CONST. amend. XIV, § 1, prevents a court from exercising personal jurisdiction over a non-resident defendant who lacks meaningful relations with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470–73, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). It requires that the defendant have "fair warning that a particular activity may subject ... [him] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring in the judgment). The "fair warning" requirement affords "a degree of predictability to the legal system" and permits "potential defendants to structure their ... conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ "[F]oreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295, 100 S.Ct. at 566. What is critical "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. It is essential that the court find that there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "Jurisdiction is therefore proper only where the defendant's contacts create a 'substantial connection' with the forum." *Lake Shore*, 886 F.2d at 658; *see also Burger King*, 471 U.S. at 462, 105 S.Ct. 2174. "The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (citations omitted). Hence, a court may not exercise personal jurisdiction under the minimum contacts analysis if the defendant's contacts do not represent "significant activities" within the forum state, but rather are random, isolated or fortuitous. *Lake Shore*, 886 F.2d 654; *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–75, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

Hardrodt's contacts with South Carolina are insufficient to justify exercising personal jurisdiction over it. The mere discovery of the loose magnesium phosphide in South Carolina does not create a "substantial connection" between South Carolina and Hardrodt. As the magnesium phosphide was to be discharged in Maryland, Hardrodt did nothing directed towards South Carolina and could not have reasonably anticipated being haled into court in South Carolina on a claim arising out of its processing the transport of the magnesium phosphide. It was only through a series of unforeseeable and unusual circumstances that any of the magnesium phosphide ended up in South Carolina, and that contact can only be characterized as fortuitous, isolated and random. *Cf. Lake Shore*, 886 F.2d 654. Hardrodt did nothing to purposefully avail itself of the privilege of conducting activities within South Carolina, thus invoking the benefits and protections of its laws.

■ Degesch Chile contends that when considering Hardrodt's contacts, the court is not constrained to consider Hardrodt's contacts with South Carolina, but rather may consider Hardrodt's contacts with the United States as an entity. Degesch Chile is incorrect. There have been a few isolated cases in which courts have considered the minimum contacts of an alien defendant with the United States as a whole rather than a forum state in which the court sits. *See, e.g., Holt v. Klosters Rederi A/S*, 355 F.Supp. 354 (W.D.Mich.1973); *First Flight Co. v. National Carloading Corp.*, 209 F.Supp. 730 (E.D.Tenn.1962). Most courts, however, have concluded that they are limited to considering the defendant's contacts with the forum state, even in federal question cases, because there is no authority for them to

apply a nationwide contacts standard. *See, e.g., Lake Shore,* 886 F.2d at 657 n. 2 (citing *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 283 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981) and *Burstein v. State Bar of California,* 693 F.2d 511, 514–17 (5th Cir.1982)); *see also Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406 (9th Cir.1977); *Ingersoll Milling Mach. Co. v. J.E. Bernard & Co.,* 508 F.Supp. 907 (N.D.Ill.1981). Thus, this court concludes that the nationwide contacts standard is not a viable standard for judging Hardrodt's contacts and will consider only Hardrodt's contacts with South Carolina.

■ Furthermore, as a basis for personal jurisdiction, Degesch Chile maintains that it was foreseeable that the magnesium phosphide could have ended up in any port on the M/V Santa Clara I's ("Santa Clara") itinerary and therefore asserts that since Hardrodt had a hand in placing the magnesium phosphide on the Santa Clara, it is subject to personal jurisdiction anywhere she makes port. This position is diametrically opposed to the law of personal jurisdiction as developed by the United States Supreme Court and the Fourth Circuit Court of Appeals.

Conspicuously absent from Degesch Chile's Response to Hardrodt's Motion to Dismiss for Lack of Personal Jurisdiction are *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, and *Asahi Metal,* 480 U.S. 102, 107 S.Ct. 1026.[12]

In *World–Wide Volkswagen,* the plaintiffs, New York Residents, purchased an allegedly defective automobile in New York from the defendants who were New York wholesale and retail automobile dealers. The plaintiffs were injured in Oklahoma while crossing that state in the newly purchased car on their way to a new home in Arizona. The injuries occurred when their car, upon being struck by another car, burst into flames. The plaintiffs brought a products liability action in Oklahoma, with long arm service on the New York defendants. The Oklahoma courts upheld their jurisdiction, but the United States Supreme Court reversed, holding that Oklahoma lacked the "minimum contacts" or "affiliating circumstances" required by the due process clause. The court held that the fact that an automobile sold in New York might foreseeably be driven anywhere was not enough, and stated that:

> 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction....
>
> \* \* \* \* \* \*
>
> This is not to say, of course, that foreseeability is wholly irrelevant.... [T]he defendant's conduct and connection with the forum State [must be] ... such that he should reasonably anticipate being haled into court there.

444 U.S. at 295–97, 100 S.Ct. at 566–67.

In *Asahi Metal,* the plaintiff was injured and plaintiff's decedent was killed when he lost control of his motorcycle and collided with a tractor. The plaintiff brought a products liability action against, among others, the manufacturer of the innertube of the rear tire of his motorcycle alleging that the accident was caused by a sudden loss of air and an explosion in the rear tire of the motorcycle. The innertube manufacturer brought a third-party indemnification action against, among others, Asahi Metal Indus. Co., the manufacturer of the tube's valve assembly. In holding that the California courts lack personal jurisdiction over Asahi Metal Indus. Co., the court noted that the mere placement of a product into the stream of commerce without more is not an act purposely directed towards the forum state and is insufficient to support an exercise of personal jurisdiction consistent with the due process clause.

As both *World–Wide Volkswagen,* 444 U.S. 286, 100 S.Ct. 559, and *Asahi Metal,* 480 U.S. 102, 107 S.Ct. 1026, make clear, foreseeability alone is insufficient to support an exercise of

---

12. Curiously, Degesch Chile admits that this court lacks general personal jurisdiction over Hardrodt and then proceeds to base its discussion of due process limitations on personal jurisdiction on *Helicopteros,* 466 U.S. 408, 104 S.Ct.

1868. What is curious about this is that *Helicopteros* is a general jurisdiction case in which there were no allegations of specific jurisdiction nor was the same extensively discussed.

personal jurisdiction consistent with the due process clause. Rather, the "substantial connection" between the forum state and the defendant sufficient to support a "finding of minimum contacts must come about by an action of the defendant purposefully directed towards the forum State." *Asahi Metal*, 480 U.S. at 112, 107 S.Ct. at 1032.

Consistent with the teachings of *World–Wide Volkswagen* and *Asahi Metal* is the Fourth Circuit's opinion in *Lake Shore*, 886 F.2d 654. Lake Shore Insurance Company was the insurer of a general electric company turbine accessory which was damaged while being loaded on board the M.V. PAUL BUNYON. The Federal Insurance Company paid the General Electric Company for the damage to the turbine and, as subrogee, brought an action against Lake Shore, Inc., which manufactured a winch on the M.V. PAUL BUNYON. This winch allegedly failed while the turbine accessory was being loaded onto the M.V. PAUL BUNYON.[13] Lake Shore Inc. was a Michigan corporation with its principle place of business in Iron Mountain, Michigan. The M.V. PAUL BUNYON was designed and manufactured by Peterson Builders, Inc., a Wisconsin corporation with its principle place of business in Wisconsin. It was Peterson which installed the Lake Shore-manufactured winch on the M.V. PAUL BUNYON. In affirming the district court's dismissal of the case for lack of personal jurisdiction, the court rejected the argument that one who places a product on board a ship should expect to be haled into court in any jurisdiction in which the ship makes port. Consistent with *World–Wide Volkswagen*, the court noted that the mere fact that it is foreseeable that a ship may come into contact with all states containing major ports is insufficient to sustain an exercise of personal jurisdiction in a state containing a major port, noting: "[a]ll products are mobile to some extent and a

product-by-product approach to personal jurisdiction would succeed only in drawing courts into an arcane and litigious search for meaningless distinctions." *Id.*

This case is not much different in material respects from *Lake Shore*, 886 F.2d 654, nor is Degesch Chile's argument much different than that advanced by Federal Insurance Company. Here, Degesch Chile contends that this court has jurisdiction over Hardrodt by virtue of the fact that Hardrodt had some part in arranging to have the magnesium phosphide shipped aboard the Santa Clara and since the Santa Clara is a ship and could, therefore, make port in any state containing a major port, Hardrodt should anticipate being haled into court in all such states. The flaw in this argument is, and the Fourth Circuit has said, that this alone is insufficient to establish a minimum contact necessary to exercise personal jurisdiction. Therefore, Degesch Chile's contention in this regard is without merit.

■ The analysis under the "traditional notions of fair play and substantial justice" prong of the minimum contacts standard is in essence a determination of reasonableness. *Asahi Metal*, 480 U.S. 102, 107 S.Ct. 1026. When ascertaining whether an exercise of personal jurisdiction over a non-resident defendant is reasonable, a court must consider: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

■ A consideration of these factors reveals the unreasonableness of an assertion of personal jurisdiction over Hardrodt by a South Carolina court, even apart from the

---

**13.** At this point in the proposed order, it states as follows:

The Federal Insurance Company paid the General Electric Company for the damage to the turbine and, as subrogee, brought an action against Lake Shore, Inc., which manufactured a a *wench* on the M/V PAUL BUNYON, that allegedly failed while the *turban* accessory was being loaded onto the M/V PAUL BUNYON.
Hardrodt's Proposed Order, p. 19.

The court realizes that there were sailors on the M.V. PAUL BUNYON and that sailors are from time to time depicted in the movies and on television as consorting with "wenches" on shore. The court also will accept the premise that some sailors in the mid and/or far East may have worn "turbans." However, this court cannot imagine a "turban" which was required to be loaded on a ship by a "wench."

question of Hardrodt's contacts with South Carolina.

The burden on Hardrodt is severe. If personal jurisdiction over Hardrodt is exercised, Hardrodt will be commanded not only to traverse the distance between Chile and South Carolina, but also to submit its dispute with Degesch Chile to a foreign nation's judicial system. *See id.* "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114, 107 S.Ct. at 1033.

The interests of Degesch Chile and the interests of this court in asserting personal jurisdiction over Hardrodt are slight. The transaction upon which Degesch Chile's claims are based took place in Chile. Both Hardrodt and Degesch Chile are Chilean corporations. Both have their principal place of business in Chile. Though Degesch Chile is a party to the instant action, it has not demonstrated that it is more convenient for it to litigate its indemnification claims against Hardrodt in South Carolina rather than in Chile; rather, given that all of the witnesses involved in this transaction reside in Chile, a contrary conclusion must be reached.

Because neither Hardrodt nor Degesch Chile are South Carolina residents, this court's interests in the dispute are considerably diminished. *See id.* The dispute between Degesch Chile and Hardrodt is about indemnification, and is governed by the law of Chile. *See Dracos v. Hellenic Lines, Ltd.,* 705 F.2d 1392, 1396 (4th Cir.1983), *cert. denied,* 474 U.S. 945, 106 S.Ct. 311, 88 L.Ed.2d 288 (1985) (enumerating factors to consider when determining choice of law in maritime tort cases); *White v. Johns–Manville Corp.,* 662 F.2d 243 (4th Cir.1981) (in maritime actions, non-maritime contracts over which court has pendent, ancillary or diversity jurisdiction are governed by state law); *Joye v. Heuer,* 813 F.Supp. 1171 (D.S.C.1993) (under South Carolina choice of law rule, law of place where contract is made governs contract). It would be incongruous for a United States District Court sitting in South Carolina to decide whether, under the laws of

Chile, one Chilean corporation should indemnify another Chilean corporation on the basis of a transaction which took place in Chile.

"World–Wide Volkswagen ... admonished courts to take into consideration the interests of the 'several States,' in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies." *Asahi Metal,* 480 U.S. at 115, 107 S.Ct. at 1034. In this case, the court must consider the procedural and substantive policies of Chile whose interests are affected by the assertion of personal jurisdiction over Hardrodt by this court. *See id.* The procedural and substantive interests of other nations in a United States Court's assertion of jurisdiction over one of the other nation's citizens will differ from case to case. *See id.* Nevertheless, in every case the interests of the other nation, as well as the interests of the United States' "foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115, 107 S.Ct. at 1034. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* (quoting *United States v. First Nat'l City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). Considering the international context, the heavy burden on Hardrodt and the slight interests of Degesch Chile and this court, an exercise of personal jurisdiction by this court over Hardrodt under the facts of this case would be unreasonable and unfair.

Since Hardrodt does not have sufficient contacts with South Carolina and exercising personal jurisdiction over it will "offend 'traditional notions of fair play and substantial justice,'" due to its unreasonableness, this court may not use specific jurisdiction as a basis for exercising personal jurisdiction over Hardrodt in this matter.

### B. NON-MARITIME CONTRACTS

▮ Degesch Chile states, without citing any authority: "There can be no question that the business activities of a freight forwarder for ocean shipment of goods from

which damages arise falls squarely within the admiralty and maritime jurisdiction of the Court." Degesch Chile's Response to Hardrodt's Motion to Dismiss for Lack of Personal Jurisdiction, p. 4. Degesch Chile then says, without citing any authority: "The weight of authority for the Court to take jurisdiction of the maritime claim presented obviates the need to do more than acknowledge it...." *Id.* at p. 4–5. Based on this, Degesch Chile argues, in essence, that this Court's determination of the reasonableness of exercising personal jurisdiction over Hardrodt in this case must be viewed in the context of the Court's basis of subject matter jurisdiction, which, being admiralty, justifies an exercise of personal jurisdiction over Hardrodt. This, however, is incorrect.

 It is axiomatic that the admiralty and maritime jurisdiction of the federal courts includes any dispute involving a maritime contract. *See, e.g., Rex Oil, Ltd. v. M/V JACINTH,* 873 F.2d 82 (5th Cir.1989), *cert. denied,* 493 U.S. 1043, 110 S.Ct. 836, 107 L.Ed.2d 832 (1990). It is equally well settled that agreements preliminary to a maritime contract are not within the admiralty and maritime jurisdiction of the federal courts. *See, e.g., Peralta Shipping Corp. v. Smith & Johnson (Shipping) Corp.,* 739 F.2d 798, 801 (2d Cir.1984), *cert. denied,* 470 U.S. 1031, 105 S.Ct. 1405, 84 L.Ed.2d 791 (1985). Though of ancient vintage, the courts have consistently upheld the distinction between these two types of contracts so as to clearly define the boundaries of admiralty jurisdiction. *Id.*

In this case, Hardrodt's only function was to forward the documents provided to it by Degesch Chile to a local Chilean customs agent, who prepared and drew up the bill of lading. It was Mr. Rodriguez who sent the bill of lading to the local Chilean carrier's ship agent, who stamped, dated, numbered, signed and inserted the freight value onto the bill of lading. Empresa then forwarded the bill of lading to Degesch Chile against payment of the freight. Hardrodt did not see the bill of lading prior to its delivery to Empresa, nor was it ever sent the original bill of lading, but rather received a copy, as the original was sent to Degesch Chile.

Though the bill of lading itself may be a maritime contract, the bill in this case was prepared by Mr. Rodriguez and completed by Empresa. The act of forwarding the document supplied by Degesch Chile to Mr. Rodriguez does not in itself create a maritime contract between Degesch Chile and Hardrodt. *See Johnson Prod. Co. v. M/V La Molinera,* 619 F.Supp. 764 (S.D.N.Y.1985) (freight forwarder's forwarding of bill of lading prepared by third-party to shipper does not in itself create a maritime contract between shipper and freight forwarder); *Cf. id.* (agent's supervision over maritime contract does not create maritime jurisdiction as to agent). Therefore, the agreement between Degesch Chile and Hardrodt is not a maritime contract and does not fall within the admiralty and maritime jurisdiction of this court.[14]

## IV. CONCLUSION

It is therefore,

**ORDERED,** that Degesch De Chile, Ltda.'s fourth-party action against A. Hardrodt Chile, S.A. in this matter be **DISMISSED** pursuant to FED.R.CIV.P. 12(b)(2) for lack of jurisdiction.

**AND IT IS SO ORDERED.**

---

**14.** This court's subject matter jurisdiction over Degesch Chile's claims against Hardrodt is ancillary to its admiralty and maritime jurisdiction over the main action.